# THE WASHINGTON, COLESVILLE AND ASHTON TURNPIKE COMPANY *vs.* PHILIP J. CASE.

*Liability of Turnpike Companies—Defective Bridges—Negligence—Pure Accident—Evidence.*

In an action against a turnpike company to recover damages for an injury alleged to have been caused by the defective timbers of a bridge on defendant's road, evidence of a witness, who examined the bridge several months after the accident, to the effect that the timber was decayed, and that, from his knowledge of the qualities of such wood, the decay must have set in at the time of the accident, is admissible.

A turnpike company is bound to keep its bridges in safe condition, and is liable to a person who, while exercising ordinary care himself, is injured in consequence of the unsafe condition of a bridge.

But such corporation is not an insurer of the safety of travellers using its roads and bridges. If a bridge is properly maintained, and an injury is caused by the accidental displacement of a single plank, of which the company had no notice and could not by the exercise of reasonable diligence have known, then the company is not liable.

For a mere accident, unmixed with the negligence or fault of the party to whom it is attributed, no action will lie. An accident which furnishes no cause of action, is an inevitable occurrence, not to be foreseen and prevented by vigilance and care, and not occasioned or contributed to, in any manner, by the act or omission of the company or its agents.

The fact that the bridge in question was repaired a year after the injury complained of, furnishes no evidence from which the plaintiff can claim that the repairs were made because the bridge was in a defective condition at the time and place of the accident.

The care and caution which a discreet and prudent individual would exercise if the risk were his own is not the care and caution required of a turnpike road or bridge company. The mere use of ordinary care in repairing the bridge would not exculpate the defendant if it had not by such care made the bridge safe.

The fact that the plaintiff had not paid toll for the use of the bridge where the accident occurs, does not exempt the defendant from liability for its negligence.

Appeal from the Circuit Court for Montgomery County.

This was an action to recover damages for an injury alleged to have been caused by the defective condition of a bridge on defendant's road.   The plaintiff's evidence is set forth in the opinion of the Court.   The defendant's witnesses testified that a constant supervision was exercised over the bridge, and that it was examined immediately after the accident and found to be in a sound condition.   The first exception was taken to the action of the trial Court (VINSON and LYNCH, JJ.), in permitting a witness produced on the part of the plaintiff to testify that he had examined the bridge in question nearly a year after the injury complained of; that the sleeper upon which the boards of the flooring met was decayed, and that, from his knowledge of, and experience with timber, such decay must, in his opinion, have set in at the time of the accident.   The second exception was taken by the defendant to the granting of the plaintiff's first and second prayers, and to the refusal of the Court to grant defendant's third, fourth, fifth, sixth, seventh and eighth prayers.   The first and second prayers of the plaintiff, which were granted, were as follows:

*Plaintiff's First Prayer.*—The plaintiff, by his attorneys, prays the Court to instruct the jury, that if they find from the evidence that the defendant corporation owned and kept open for public travel the turnpike road spoken of in the evidence, then it was required to keep its said road and its bridges thereon in a safe condition for the use of persons who might use the same with ordinary care and caution; and if they further find that on the day of the happening of the injury complained of, the defendants had permitted a part of its road, the bridge referred to in the evidence, to be in an unsafe condition, and that in consequence of such unsafe condition the plaintiff, while travelling over said bridge and using ordinary care and caution, was injured as complained of, then the plaintiff is entitled to recover in this action.

*Plaintiff's Second Prayer.*—That the care and caution required of one travelling on a turnpike road, as stated in

the plaintiff's first prayer, is simply such as persons of common prudence ordinarily exercise under similar circumstances.

The prayers of the defendant, which were rejected, were as follows:

*Defendant's Third Prayer.*—The defendant prays the Court to instruct the jury, that no evidence as to the condition of any other portion of the bridge referred to in the testimony can be considered by them in making up their verdict, except such as the jury shall find, had some direct bearing in causing the plank to fly up ; if the jury so find, and even if the jury should believe that other portions of said bridge were defective, yet their verdict must be for the defendant, unless they shall find that there was such defect in said bridge as to cause the accident complained of.

*Defendant's Fourth Prayer.*—The defendant prays the Court to instruct the jury, that if they believe from the evidence that the defendant, some twelve months or more after the accident, made a general repair of said bridge, in connection with all other bridges on its road, that this furnishes no proof from which the plaintiff can claim it was done because it was out of repair at the place and the time of the accident, and unless the jury find from other evidence that said bridge at the time and at the place of the accident was actually in an unsafe condition, and that by reason thereof the alleged injury was actually sustained, without any carelessness on part of the plaintiff, then their verdict must be for the defendant.

*Defendant's Fifth Prayer.*—The defendant prays the Court to instruct the jury, that the degree of care and caution necessary to have been exercised by the defendant, in regard to the maintenance and repair (when needed) of the bridge referred to in the testimony, is that which a discreet and cautious individual would or ought to use if the risk were his own ; and if the jury believe from the evidence that the defendant exercised such care, then their verdict must be for the defendant.

*Defendant's Sixth Prayer.*—The defendant prays the Court
to instruct the jury, that in considering whether the de-
fendant kept a well-maintained highway at the point of the
alleged accident, they must consider the location of the road
or bridge, the geographical features of the road, the diffi-
culty of keeping it in a better condition without an unreason-
able expense, the course of the stream, size and character
of the same, and the kind and amount of travel having oc-
casion to pass over it.

*Defendant's Seventh Prayer.*—If the jury believe from the
evidence that the bridge in question was properly main-
tained to safely accommodate the travel and traffic on said
turnpike road, and if the injury complained of was caused
by the accidental displacement of a single plank on said
bridge, of which the company had no notice, and could not
by the exercise of reasonable diligence have known, then
their verdict must be for the defendant.

*Defendant's Eighth Prayer.*—Unless the jury shall find
from the evidence that the plaintiff, or his employer, for
whom he was acting at the time of the alleged accident, had
paid toll or contracted to pay toll for the use of the de-
fendant's road and bridges, their verdict must be for the
defendant.

The cause was argued before ROBINSON, C. J., BRYAN,
MCSHERRY, FOWLER, BRISCOE and BOYD, JJ.

*Thomas Anderson* and *W. Veirs Bouic,* for the appellant.
We shall claim, first and principally, that according to
the appellee's contention, the injury was caused by an ac-
cident for which the appellant cannot be held responsible,
and that the seventh prayer of the appellant, which was re-
jected by the Court below, should have been granted. "An
accident is an event happening unexpectedly and without
fault." *Cooley on Torts,* p. 93. " For a purely accidental
occurrence causing damage without the fault of the person
to whom it is attributable, no action will lie, for though

there is damage, the thing amiss, the *injuria* is wanting."
*Cooley on Torts*, pp. 91, 92, 754; *Townsend* v. *President,
etc., Turnpike Road,* 6 Johns (N. Y.) 90. The measure of
liability of a turnpike company and a municipal corporation
is precisely the same. *Chicago City* v. *Robbins,* 2 Black,
418; *Angell on Highways,* Secs. 8, 272, and cases.

Municipal corporations are not responsible for accidents
happening by reason of defects in their streets or roads
without fault of which they have no notice, and could not
by the exercise of reasonable diligence have had notice.
*Stoddard* v. *Town of Winchester,* (Mass.) 27 N. E. 1014;
*Angell on Highways,* p. 388 (note.); *Idem,* p. 391, sec.
299; *Balls* v. *Woodward,* (Cir. Ct.) 52 F. 646; *Fuller* v. *City
of Jackson,* 52 Mich. 197; *Davis* v. *City of Cory,* 154 Pa.
St. 598; *Bergeoin* v. *City of Chippewa,* 82 Wis. 505; *Roche-
fort* v. *Town of Attleborough,* (Mass.) 27 N. E., 1013, and 82
Mich. 480; and 59 Hun. 617, (13 N. Y. S. 174.)

It was certainly error to reject the defendant's fourth
prayer. Subsequent repairs, especially at so remote a
period from the date of the alleged injury, are never per-
mitted to go to the jury as evidence that the road was out
of repair at the time of the alleged injury. *Patterson's
Railway Accident Law,* p. 421, sec. 365.

The defendant's fifth prayer, we contend, correctly defined
its obligation in regard to the maintenance of the bridge
and the degree of diligence required of it. *Angell on High-
ways,* p. 321 (note.)

The defendants's eighth prayer should have been granted.
*St. Louis Bridge Co.* v. *Miller,* 28 N. E. R. 1091; 39 Ill.
Ap. 366; *Angell on Highways,* p. 9, sec. 9, and authorities
cited.

*James B. Henderson* (with whom was *Edward C. Peter* on
the brief), for the appellee.

A corporation authorized to receive toll for the use of its
road is held to a higher degree of diligence in caring for the
safety of its travellers, than a corporation performing that

service for the public gratuitously would be.    *St. Louis Bridge Co.* v. *Miller*, 138 Ill. 474.

The policy of the law differs essentialy in the two cases. *Yale* v. *Hampden and Berkshire Turnpike Co.*, 18 Pick. 359. A turnpike company which derives a revenue from the use of its road is directly liable to those who travel upon it for injuries occasioned by want of repair of the road without any statutory provisions imposing such liability. *Balto. and Yorktown Turnpike Co.* v. *Parks*, 74 Md. 287. *Same* v. *Crouthers*, 63 Md. 564. It was the appellant's *duty* to keep its road in repair, and to *know* there was no defect in it, and it is liable for any injury to a person arising from want of repair whether the defect be latent or patent, unless he be in default or unless the defect arose from inevitable accident, tempest or lightning, or the wrongful act of some third person of which it had no notice or knowledge. It matters not that ordinary care was used. *Balto. and Yorktown Turnpike Road* v. *Parks, supra ; Yale* v. *Hampden and Berkshire Turnpike Co., supra ; Penna. and Ohio Canal Co.* v. *Graham*, 63 Pa. St. Rep. 297 ; *Grisby* v. *Chappell*, 5 Richardson (S. C.) 455 ; *Railroad Co.* v. *Hughes*, 11 Pa. 141. And it was not necessary that the appellee should have paid toll. His liability to pay toll was a consideration for the undertaking on the part of the appellant to furnish him a safe road as an equivalent. *Park's case, supra. Yale* v. *Hampden and Berkshire Turnpike Co., supra.* The appellee's first prayer was adopted from *Park's case, supra*, and is sustained by all the authorities cited in this brief. It is substantially the instruction given by the Court in *Townsend* v. *The Susquehanna Turnpike Road*, 6 Johns. Rep. 90, which was approved by the Court of Appeals in that case.

The appellant by its fourth prayer sought to withdraw from the consideration of the jury the evidence in chief of its own witness, that subsequent to the injury complained of he had reconstructed the bridge. This evidence was introduced without objection from the appellee, and the Court below properly refused to take it from the jury.

*Thompson on Trials,* sec. 722, citing *Decker* v. *Bryant,* 7 Barb. (N. Y.) 183 ; *Clinton* v. *Rowland,* 24 Barb. 534.

The appellant by its seventh prayer presents the theory that to render it liable to the appellee the injury complained of must have resulted from a patent defect in its road of the existence of which it had or by due diligence could have had notice, and to sustain this position a number of cases against municipal corporations are cited in its brief, disregarding the distinction drawn by the authorities between the liability of public and private corporations. *St. Louis Bridge Co.* v. *Miller, supra ; Yale* v. *Turnpike Co., supra.* The accidents for which turnpike companies cannot be held liable are such as arise from causes over which it has no control, such as tempest, lightning or wrongful act of a third person of which it had no notice or knowledge, not such as are caused by a condition which it has permitted to exist. In this case it is not so much the accidental displacement of a plank for which the appellant is held responsible, as the condition of the bridge which rendered such displacement probable or possible, whether such condition be the result of an originally defective construction or of gradual deterioration. This condition of the bridge it was bound to know. *Rapho* v. *Moore,* 68 Pa. St. Rep. 408.

McSHERRY, J., delivered the opinion of the Court.

This is a suit to recover damages for a personal injury. The verdict and judgment were in favor of the plaintiff and the defendant has appealed.

The appellant is a body corporate owning a turnpike road extending from Ashton to Sligo, in Montgomery County. The declaration alleges that a small bridge, forming part of the road, was negligently suffered to be out of repair, whereby the plaintiff in rightfully travelling along the road and across the bridge was hurt whilst using due care himself. It appears that the accident occurred in April, 1892, in the following manner : As the plaintiff was descending a hill above the bridge, driving a team which was hauling a heavily

loaded four-horse wagon, he locked the wheels, and when he reached the foot of the hill immediately at the bridge, he went behind the wagon and unlocked the wheels.   Whilst doing this the horses had passed on to the bridge.   He then discovered that his lead horse was going too much to one side of the bridge and he ran forward to seize the lead line and control the direction of the team and as he got about midway of the bridge and opposite the wagon his left leg slipped through a hole in the bridge floor, which hole was caused by the displacement at that moment of a single plank composing a part of the flooring.   This displacement was apparently produced by the front wheels of the wagon.   Whilst in the act of withdrawing his leg the hind wheels passed over and pressed upon the same plank and injured his leg above the knee.   The bridge was built upon two stone walls or abutments which were parallel to the stream.   Upon these walls and at right angles to them a number of sills or sleepers were placed about twenty inches apart, and the oak flooring of the bridge was laid transversely upon and nailed to these sills.   The boards forming the floor were not long enough to extend the whole width of the bridge, but were joined upon one of the sills slightly to one side of the centre.   It was claimed by the plaintiff, that the plank which was displaced as above stated was displaced by one of the front wheels of the wagon forcing it off the sill on which the boards of the flooring met.

Upon the trial in the Court below, a witness testified that he was a builder and carpenter and was acquainted with the enduring qualities of timber, and that he had examined the bridge in February or March, 1893, nearly a year after the accident.   The witness was then asked to describe the condition in which he found the sill or sleeper upon which the boards of the flooring met; but the defendant objected, whereupon the plaintiff's counsel stated to the Court, that they expected to prove by the witness that when he examined the sill in question it was badly decayed, and that from the extent of the decay then existing and his knowl-

edge of and experience with timbers, in his opinion the decay must have set in at the time of the accident. Thereupon the Court allowed the question to be asked and it was answered as indicated in the proffer above stated. This ruling forms the ground of complaint set forth in the first bill of exceptions. We see no serious objection to this ruling, and but little reliance was placed upon this exception in the oral argument. The opinion of the witness in connection with the facts to which he had testified was some evidence, though slight, that tended to show the condition of the sill when the accident happened, and whilst its value may not have been great, it was certainly admissible.

The only other exception contained in the record brings up the rulings on the prayers. The plaintiff's first and second prayers were granted and his third was conceded. The defendant's first was conceded, its second was granted, and its third, fourth, fifth, sixth, seventh and eighth were rejected. The first and second prayers of the plaintiff were properly granted. They fairly presented his theory of the case, and similar ones have been so frequently considered by this Court, that it would serve no useful purpose to review or discuss them. In the recent case of *Balto. & York. Turnpike Co.* v. *Parks*, 74 Md. 287, precisely the same instructions were upheld.

The defendant's seventh prayer, which was rejected, raises the chief question on this appeal. By that prayer the appellant asked the Court to say to the jury that if they believed from the evidence that the bridge was properly maintained to safely accommodate the travel and traffic on the turnpike road, and if the injury complained of was caused by the accidental displacement of a single plank on the bridge, of which the company had no notice and could not by the exercise of reasonable diligence have known, then the verdict should be for the defendant. This prayer ought to have been granted. Whilst independently of any statute, a turnpike road company or other similar corpora-

tion, which charges tolls for the privilege of using its road or bridge, is liable for injuries occasioned by its negligence. *Balto. & York. Turnpike Co.* v. *Crowthers*, 63 Md. 564, and in this respect differs from a municipal corporation, which is only liable for a breach of some statutory duty, still neither upon principle nor authority can the former be treated as an absolute insurer of the safety of persons who use its roads or bridges.   Even a carrier of passengers is not held to such a stringent liability, for he is only bound to employ " the utmost care and diligence which human foresight can use."   *State, use of Coughlan,* v. *B. & O. R. R. Co.,* 24 Md. 102.   If corporations of the kind now before us, be not insurers, it is difficult to suggest a reason for the refusal to grant the prayer now being considered.   There was sufficient evidence, if credited by the jury, to support the hypothesis it submitted, and it comes then to the single inquiry whether the proposition of law it embodied was correct.

In all actions of this character negligence on the part of the defendant is the foundation of the plaintiff's case.   If there be no negligence, though there be an injury, no action will lie.   Negligence is purely relative.   In every instance it essentially involves some breach or omission of a duty that is owed to another.   Without this it cannot be predicated of any act.   Where, however, the act complained of and alleged to be negligent could not by the exercise of proper diligence have been foreseen, and is concurrent in its origin with the resulting injury, and as simultaneous therewith as physical cause and effect can be, and there is no antecedent dereliction or breach of duty, actual or constructive, constituting an ulterior or primary cause, the act belongs not to the class of negligent acts, but to that described as accidents. For a mere accident, unmixed with negligence or fault on the part of the person to whom it is attributed, no action will lie.   *Gault* v. *Humes*, 20 Md., 297.   An accident, then, which furnishes no cause of action, is an inevitable occurrence, not to be foreseen and prevented by vigilance, care and attention, and not occasioned or contributed to, in any man-

ner, by the act or omission of the company, its agents, employes or servants. *Carroll* v. *Staten Island R. R. Co.*, 58 N. Y. 126. It is distinguishable from an act of God in this, that in the latter there is, whilst in the former there is not the presence and operation of a *vis major. Patterson's Railway Accident Law*, 35, *and cases cited in note 2.*

There was evidence in the cause from which the jury might well have found that immediately before the accident the bridge was properly maintained; that is, was kept in repair to safely accommodate the travel and traffic over the road; that all the boards of the flooring were securely nailed down upon the sills or sleepers, and that no defects were visible or apparent. If besides finding these facts the jury had further found (and there was evidence, if credited, to justify the conclusion) that there was no defect or disrepair of any kind prior to the injury, but that the injury resulted from the "accidental displacement of a single plank" of which the company's agents and servants did not know, and could not by the exercise of reasonable diligence have known, because the displacement occurred simultaneously with the injury and from no antecedent neglect, then a case of accident, pure and simple, was presented without an ingredient of negligence. If this be so the company was not liable, and it was entitled to have that theory of the case presented to the jury as the seventh prayer was designed to present it; and there was consequently error in refusing to grant that prayer.

There is nothing in either *Crowther's case*, 63 Md. *supra*, or *Park's case*, 74 Md. *supra*, inconsistent with this conclusion. In each of those cases it was held that for defects in a turnpike road the corporation was responsible in damages to the person injured, even though no statute imposed the liability, and in neither was the doctrine laid down or suggested that this liability included an injury occasioned by a pure accident. On the contrary, in the last cited case, to preclude such an inference, it was expressly said, "If the defence had shown that the defect had been occasioned by

causes over which it had no control, and of which (defect) it could not possibly, after its occurrence, have been aware, a different question would be presented."

There was also error in rejecting the fourth prayer of the appellants. It appears by the record that about a year after the accident happened the company directed all its bridges to be repaired. In doing this it was found that some of the timber in the bridge now in question was doted, or partially decayed, but still sufficiently sound and secure to have lasted several years. This doted timber was not put back in the bridge. By the fourth prayer the defendant asked the Court to say to the jury, that the fact that the bridge was repaired a year after the accident, furnished no evidence from which the plaintiff could claim that the repair was done because the bridge was in a defective condition at the time and place of the accident. In other words it asserted that because the bridge was repaired in June, 1893, it did not follow that it was out of repair in April, 1892. This seems to be obvious. There was no such relation between the act of repairing in 1893, and the condition of the bridge a little over a year before, as to justify the inference that the condition in 1892 necessitated the repair in 1893. When the fact to be proved is the condition at the time of the injury, evidence of a condition at a subsequent period so remote as to be an independent and collateral circumstance is clearly irrelevant. *Reed* v. *N. Y. C. R. W. Co.*, 45 N. Y. 574. The prayer sought to point out to the jury this legal principle, and should therefore have been granted.

The third prayer was properly rejected. There was no evidence to support its hypothesis.

The fifth, sixth and eighth prayers were also properly rejected. The fifth because the degree of care it prescribed as the measure of the defendant's obligation with respect to the maintenance of its bridges in repair was not rigorous enough; and because, further, it exempted the defendant from liability if it used the degree of care therein defined,

even though the bridge continued to be in fact defective. The care and caution which a discreet and prudent individual would exercise if the risk were his own is not the care and caution required of a turnpike road or a bridge company which charges tolls for the use of its road or bridge. Such a corporation is held to a degree of care closer akin to that exacted of a carrier of passengers. The mere use of ordinary care in repairing the bridge would not exculpate the defendant if it had not by such care made the bridge safe. *Horton* v. *Inhabitants of Ipswich*, 12 Cush. 488. The sixth prayer put an abstract proposition to the jury and for that reason was properly rejected. The eighth prayer was wrong. Whether the plaintiff had paid the toll or not was immaterial. He was liable to pay it, and his failure to pay it, if he did so fail, did not excuse the negligence of the defendant, if the latter was really guilty of negligence.

Because of the errors we have indicated the judgment must be reversed and the cause must be remanded that a new trial may be had.

*Judgment reversed with costs above and below and new trial awarded.*