## Chesapeake & Ohio Railway Company v. Burke.

### (Decided April 11, 1912.)

### Appeal from Boyd Circuit Court.

1. Railroads—Care Owing to Passenger.—A railroad company as a carrier of passengers is not an insurer, but yet it is held to the highest degree of care which ordinarily prudent persons engaged in the operation of railroad trains exercise for the safety of passengers. It is not liable for an injury resulting to a passenger from an unavoidable accident, and is only responsible when the cause that produces the injury is due to its negligence.

2. Railroads—"Buckling of the Rails"—Derailment of Train—Injury to Passenger.—Where a passenger is injured by the derailment of a train caused by the "buckling of the rails," the company will be liable in damages, as the "buckling of the rails" is not an unavoidable accident.

3. Railroads—"Buckling of the Rails."—Rails expand under the heat of the sun, and if a sufficient space is not left between the ends of the rails to allow for this expansion the force of the expansion will cause the rails to bend; and this is called by railroad men "buckling of the rails."

S. S. WILLIS, WORTHINGTON and COCHRAN & BROWNING for appellant.

J. J. OSBORNE and GEORGE B. MARTIN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

While appellee was a passenger on one of the appellant company's trains, the car in which she was riding became derailed and rolled down an embankment, and as a result of the accident, appellee received serious and permanent injuries. To recover damages for the injuries sustained, she brought this action, and upon a trial before a jury the damages in her favor were assessed at the sum of Nine Thousand Dollars. A reversal of the judgment entered upon the verdict is asked for alleged errors committed in the trial of the case.

The train on which appellee was riding at the time of the accident was one of the appellant company's fast passenger trains and was running at a speed of about 55 miles an hour. The rear coach in which appellee was riding was the only one that was derailed, and its derailment was caused by what is known to railroad men as the "buckling of the rails." The accident happened on a very hot day in May, and the rails at the place had been laid in the previous fall or winter and there had been no hot weather from the time they were laid until the day of the accident. At the place where the derailment occurred, the section or trackmen were engaged at the time in taking out old ties, putting in new ones and leveling up the track. The evidence on behalf of appellant was to the effect that the rails and track at the place of the accident were in good condition, and that the derailment was not due to any fault of the sectionmen in repairing the track. That the train was running on its regular schedule time, all the cars and equipment being in first-class condition. While the evidence for appellee was in substance that at the place of the accident the track was not well ballasted and that some of the spikes had been drawn by the sectionmen to enable them to put the track in repair. Some of the witnesses testified that about one-half of the ballast had been removed from the track for a distance of three or four rails—its removal being made necessary in taking out the old and putting in the new ties. All of the witnesses, however, agree that the accident was due to the "buckling" of the rails, and a number of them testified that rails are more liable to "buckle" when the track is being repaired, that is, when some of the spikes are drawn and the ballast removed, than they are when the track is well ballasted, well spiked, and in first-class condition. It is

also shown that no effort was made to reduce the speed of the train at the point where this repairing was being done, and that the rails that "buckled" were at the place where the ballast had been removed from the track and some of the spikes had been drawn. The evidence further shows that rails are subject to contraction and expansion—that in cold weather the rails contract in length, and in hot weather expand in length, and, that unless proper care is exercised in laying the rails to allow for the expansion in hot weather that the force of the expansion will cause them to "buckle" or, in other words, bend; and, of course, when a straight rail "buckles" or bends to any extent, it will throw the track out of alignment and almost necessarily derail a train running over it at a high rate of speed. It is also shown by the evidence that railroad men fully appreciate and understand the necessity of guarding against accidents due to this cause, and in laying the rails it is the practice to leave a sufficient space between the ends of the rails to allow for the expansion that may reasonably and naturally be expected to occur in the climate where the track is laid. There was also testimony to the effect that occasionally in extremely hot weather rails will "buckle," although the track is in fine condition and the rails have been laid with due regard for expansion. But in this case there was sufficient evidence to warrant the jury in reaching the conclusion that the company was negligent either in laying the rails without making proper allowance for the expansion that might be expected in hot weather, or in having the track in the condition it was at the time this fast train was allowed to run over it without checking its speed.

Counsel for appellant do not contend that the case should not have gone to the jury, but they insist that the derailment was due to an unavoidable accident and that the jury should have been so instructed. But the "buckling" of rails is not an unavoidable accident. It is a thing that can be prevented by proper care in laying and maintaining the track. It is true a railroad company as a carrier of passengers is not an insurer, but yet it is held to the highest degree of care which ordinarily prudent persons engaged in the operation of railroad trains exercise for the safety of passengers. It is not liable for an injury that results to a passenger from an unavoidable accident and is only responsible when the cause that produces the injury is due to negligence on its part, or,

in other words, its failure to exercise the high degree of care required for the safety and protection of passengers. But, under the evidence in the record, the court did not err in refusing to instruct the jury that if the derailment was due to an unavoidable accident, the company was not liable, as there was no evidence that the derailment was due to accidental causes, or to an unavoidable accident. On the contrary, we should say that it was caused by the failure of the persons who laid the rails to allow proper space for their expansion or by the negligence of the trackmen in allowing the train to run over the track being repaired at the high rate of speed at which it was running when the accident occurred. But aside from this a railroad company will not be allowed to escape liability for injury to a passenger caused by the ''buckling'' of the rails upon the theory that the ''buckling'' was an unavoidable accident. Skilled railroad men know, or should know from practical experience, the effect of heat in the expansion of rails, and that if a sufficient space between the ends is not left that rails will ''buckle'' in hot weather. They also know, or should know the space that climatic conditions make it necessary to allow for the expansion that will occur; and, in laying and maintaining its tracks, a railroad company must make whatever allowance the conditions of the climate require to guard against accidents from this cause, and if it fails to do so, and injury to a passenger results, it will be liable. Instruction No. 1, given by the court, is as follows:

''The court instructs the jury that the defendant, The Chesapeake & Ohio Railway Company, in undertaking to carry the plaintiff, Marcia Moriarty Burke, as a passenger on its train did not insure her absolute safety, but it was its duty, and the duty of its servants and employes in charge of the engine and train on which she was a passenger at the time in question; and also the duties of the defendants, The Chesapeake & Ohio Railway Company of Kentucky, and The Chesapeake & Ohio Railway Company, ther servants and employes in charge of the construction, maintenance and repair of the road bed and track on, or over which said engine and train of cars were propelled or operated, at the time and place in question, to exercise the highest degree of practicable care and diligence, consistent with the prudent operation of said train, to safely convey the plaintiff to her destination. And if the jury shall believe from the evidence

that the defendants negligently suffered or permitted the road bed or track of the said Chesapeake & Ohio Railway Company of Kentucky, to become out of repair; or negligently suffered or permitted the rail or rails of its said track to become loose, or insecurely fastened, or too close together at the end of the rails, and shall further believe from the evidence that by reason of such negligence, or want of care, if any, the coach in which plaintiff was riding as a passenger was, on or about the 22nd of May, 1907, derailed, thrown from the track and wrecked and that she, while a passenger thereon, was thereby drawn down in said car, and thereby two of her ribs broken; or her shoulder fractured or dislocated, or badly cut or otherwise hurt; or her spine and back twisted or injured or her nervous system shocked and injured, then they will find for her, and fix her damages as indicated in instruction No. 4.''

One criticism of this instruction is that it included in the persons chargeable with the safe transportation of appellee the persons in charge of the train. The ground of this objection is that there was no negligence shown to exist on the part of any of the persons operating the train. Without going into the question whether the engineer and persons in charge of the train were negligent or not, we deem it a sufficient answer to the criticism to say that in no possible view of the case that we can conceive of was the inclusion of the operatives of the train prejudicial to the appellant. All of the evidence in the case was directed to the condition of the track, and it is perfectly plain that the verdict of the jury was due entirely to their conviction that the evidence showed that the company had not exercised the care required of it in the construction and maintenance of its track.

Another criticism of the instruction is that it pointed out with particularity the duty the railroad company owed to the appellee in the construction and maintenance of its road bed and track. We do not quite understand the ground of this criticism. It seems to us that the instruction did not describe the duty of the company with more particularity than was necessary to direct the attention of the jury to the issues in the case.

It is further complained that the court refused to permit Gelder and Drake, respectively Division Engineer and Supervisor of Tracks, to testify that they could not discover the existence of any defect that could have caused or accounted for the derailment of the train. It

was, of course, entirely competent for the railroad company to show that its track at the place of the accident was in good condition and that it was not due to want of care in laying the rails or in the maintenance of the road bed; and, upon these features of the case, a great many witnesses introduced for the railroad company, including Gelder and Drake, testified. After each of these witnesses had testified very fully as to the condition of the rails and the track, and the probable cause of the accident, they were each asked this question: "Could you observe from your investigations at that time the existence of any defect that would cause that wreck?" To this question objection was made and sustained, and an avowal made that each witness if permitted to answer would say that he was unable to discover any defect that would account for or cause the accident. We are not prepared to say that the court did not commit a technical error in refusing to permit these witnesses to answer this question, but, it is very clear that the failure to permit them to answer it was harmless in view of their detailed statements in answer to other questions as to the condition of the rails and track.

Judgment affirmed.