LLOYD ET AL. *v.* THE YELLOW CAB COMPANY ET AL.

[No. 22, September Term, 1959.]

*Decided October 19, 1959.*

*Motion for rehearing filed November 16, 1959, denied November 19, 1959.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

*Henry J. Frankel,* with whom was *Leon Hoffman* on the brief, for appellants.

*Frederick J. Green, Jr.,* for appellees.

Prescott, J., delivered the opinion of the Court.

This appeal involves an action for damages, before a jury, for personal injuries sustained by the infant appellant-plaintiff and for loss of services, etc., sustained by his father, also an appellant-plaintiff, as the result of an accident which occurred when said infant was struck and injured by a taxicab owned by The Yellow Cab Company and operated by its employee, Mahlon Lancaster, both of whom were defendants below and are appellees here.

The accident occurred on the 4th day of June, 1957, at or about 5 p.m., when the infant plaintiff, three years of age, was struck between the intersection of Preston and Biddle Streets, while crossing from the west to the east side of Madison Avenue. The taxicab was proceeding north on Madison Avenue approaching its intersection with Preston Street. The infant was on the step or sidewalk in front of his house, and attempted to follow two other children across the street to the opposite side of Madison Avenue. The other two children ran across ahead of him when the taxicab was approximately twenty-five feet away. The operator of the cab testified that he had noticed some children on the west side of the street,

but did not see any children crossing until they were almost to the center of the street, where they must have emerged from between parked cars. When he saw these children, they were 15 to 20 feet away from him and it was only necessary for him to slow up, as he was running between 20 and 30 miles per hour. He stated that he naturally continued to watch the two children who were crossing in front of him, and when they were about across the street, "someone hollered and said 'my brother'" and, "at that particular time [he later testified that the child, the infant plaintiff, was about 3 feet from the cab at this time] I saw this other little child nearing the cab, and I immediately applied the brakes and pulled to the curb to my right * * *; the child was running with his head down, as children running do, and he made contact with the left fender of my cab—the front fender." When the cab came to a stop, it was about two inches from the right curb and the child was lying about two feet in front of the cab. He also stated that he observed his skid marks and estimated them to be approximately 25 feet long.

The passenger in the cab testified that the infant plaintiff ran into the fender of the cab, when it was about in the middle of the block, and the cab was being operated "fairly slow."

The adult appellant, the injured child's father, testified that he was lying down in his home at the time of the accident; when he got out of the front door, he saw his wife and the cab driver picking the "baby up"; that "I didn't pay the baby and wife any attention whatsoever, I went straight to the investigating part of it to make sure that this cab was the one that made the skids"; and that the skid marks were 85 feet in length.

Mrs. Evans, a witness called on behalf of the plaintiff, testified that she saw the cab when it was about two feet from the injured child, and, in her opinion, the cab was going "fast."

The principal question raised by the appellants is what they term "error in granting the defendants' unavoidable accident prayer." During the course of his instructions to the jury, the trial judge stated:

> "*In summary,* if you find that the accident was unavoidable, unmixed or without any negligence on

> the part of the driver of the cab, *as I have heretofore explained to you about negligence,* then your verdict must be for the defendants." (Emphasis supplied.)

This was the only reference made in the charge as to the accident being unavoidable. The appellants earnestly and strenuously object to this portion of the court's instructions. They first point to Judge McSherry's classical definition of an unavoidable accident in the early case of *Washington C. & A. Turnpike Co. v. Case,* 80 Md. 36, 30 A. 571, wherein it is said that an unavoidable accident is "an inevitable occurrence, not to be foreseen and prevented by vigilance, care and attention, and not occasioned or contributed to, in any manner, by the act or omission of the company, its agents, employes or servants." Then, they call attention to the fact that in *Leland v. Empire Engineering Co.,* 135 Md. 208, 108 A. 570, this Court held that it tended to mislead the jury by merely informing them that the plaintiff was not entitled to recover if his injuries resulted from an unavoidable accident, without informing them what the law regards as such an accident; in *Schapiro v. Meyers,* 160 Md. 208, 153 A. 27, where a child was struck by an automobile at or near a street crossing, it was held that an unavoidable accident prayer was properly refused, the Court stating that, under the circumstances, the collision could clearly have been averted by care on one side or the other; and in *Peoples' Drug Stores v. Windham,* 178 Md. 172, 12 A. 2d 532, *Fogle v. Phillips,* 191 Md. 114, 60 A. 2d 198, and *State, to use of Whitaker v. Greaves,* 191 Md. 712, 62 A. 2d 197, it was held, in substance, in each case that even when an unavoidable accident prayer is appropriate, it would be misleading unless unavoidable accident were defined.[1] From the above, they argue that the facts in the instant case clearly show that the accident could have been avoided by the exercise of proper care by one side or the

---

1. We think the cases just referred to clearly and correctly enunciate the Maryland law upon the subject under discussion, especially when written prayers are granted. Our holding in this case is not to be considered as detracting from them in any manner whatsoever.

other, *i.e.,* the infant plaintiff or Lancaster, hence, under the previous decisions of this Court, an "unavoidable accident prayer" was inappropriate; but, even if such a prayer were proper, it was misleading because the court failed to inform the jury as to what the law considers an unavoidable accident.

This argument would have great force, and, unquestionably, would be controlling here, if the trial court did, in fact, grant a conventional and formal unavoidable accident prayer, as it is apparent that the facts herein would not warrant such a prayer. However, we must examine the court's charge as a whole to determine whether it fairly covered the different contentions of the parties, and what the court meant by the part quoted above, and objected to by the appellants.

As stated by the appellants, themselves, in their brief, "[t]he real question in this case * * * was whether or not the defendant [Lancaster], under all the circumstances, was negligent." We turn now to the remainder of the court's instructions to ascertain whether this question was fairly covered therein, Maryland Rule 554 b 1, and to see if the instructions were misleading or confusing. In order to do this properly, we find it necessary to refer to the charge in some detail.

Near the beginning of his charge, the court informed the jury that, "[t]his case involves a question of primary negligence on the part of the driver of the taxicab," and "negligence is a relative term depending for its determination in a particular case on all the circumstances surrounding that particular case." After stating a few of the undisputed facts, he instructed them that the burden of proof was upon the plaintiffs to establish, by a preponderance of affirmative evidence, that Lancaster "was negligent; that is to say, that this cab driver did not exercise ordinary care in the operation of his automobile, and as a direct and proximate result of his failure to exercise ordinary care, struck the infant plaintiff." The judge then explained the meaning of ordinary care. (It may be noticed that from this point in the charge until we reach that portion objected to by the appellants the instructions particularly tend to negate the idea of a conventional

unavoidable accident prayer. Any emphasis in the charge will be supplied.) The jury were then instructed that if they found that the "infant plaintiff ran or walked in front of the taxicab in the middle of the block under circumstances where, with the exercise of ordinary care on the part of the driver of the taxicab, the striking of the infant couldn't have been prevented, then the plaintiffs are not entitled to recover," but, "if you find the defendant was negligent in the operation of the taxicab and that his negligence was the direct and proximate cause of the infant's injuries," then their verdict *must* be for the plaintiffs in both cases. The court then explained that due to the tender age of the infant plaintiff—three years —he could not be guilty of contributory negligence, and this was the reason, "as regards negligence, you need *only* consider whether negligence on the part of the driver of the taxicab was the * * * cause of the accident * * *." Next, the judge informed the jury that the operator of an automobile has the right of way over pedestrians crossing a street in the "middle of the block"; that such operator, irrespective of any authorized rate of speed, is still required to operate at a speed that is reasonable and proper considering the possibility of injury to persons upon the highways; that such an operator must at all times have his car under reasonable and proper control, and keep a proper lookout, "which means he must be watchful of what is occurring ahead of him, both directly and to the extent that he can observe what is occurring, and on the sides, and he must, of course, * * * take whatever action is necessary to avoid injury to the pedestrian"; that between intersections he must keep a proper lookout for children who may suddenly come into the street in front of him, and recognize that children do not use the same degree of care and caution for their own safety as do adults; that the law requires a greater degree of care from the operator of a motor vehicle who observes a child of tender years in the street than from one who observes an adult; and that one who observes such a child must "do what a reasonably prudent person would have done under the same or similar circumstances." Immediately following this, the judge

stated the short paragraph, which has been quoted above and is the basis of the appellants' objection here being considered.

We are unable to conclude that the court attempted, in this brief statement, to interject into the case the formal, legal or, we may say, "classical" theory of an unavoidable accident; although the language used is quite similar to that employed in the stock prayer upon the subject. We think the term "unavoidable" used therein was used in the practical, lay-men's sense of the word, rather than in the manner that this Court has defined the same, when considering the propriety of granting or refusing a formal unavoidable accident prayer. The judge began the paragraph by saying, "In summary." A summary is a brief statement or restatement of main points, especially as a conclusion to a work.[2] Thus, it seems apparent that the court intended this paragraph to be a short version or recapitulation of what he had already, in quite some detail, told the jury, instead of bringing forth, for the first and only time in his instructions, the question of an un-avoidable accident in its legal sense. This seems to be even clearer when we consider this further passage used by the court, "as I have *heretofore* explained to you about negli-gence," (emphasis supplied) which conclusively demonstrates that he was referring to previous parts of his instructions. Indeed, if we combine the paragraph to which the appellants object with other short portions of the court's instructions, and paraphrase the same, we have an instruction that would read, substantially, as follows: "If you find the infant plain-tiff ran or walked in front of the taxicab in the middle of the block, at a time when its operator was free of negligence [that is to say, he was driving at a reasonable rate of speed and obeying the rules of the road], and under circumstances where, with the exercise of ordinary care on the part of the driver of the taxicab, the striking of the infant could not have been avoided, then the plaintiffs are not entitled to recover and your verdict must be for the defendants; but if you find that the taxicab was being operated negligently [in this case the negligence would have had to have been excessive speed

---

2. The American College Dictionary (1958 Ed.).

and/or a failure to keep a proper lookout; and the court had already explained to the jury that negligence to be compensable must be the proximate cause of the injuries] the defendants cannot escape liability for striking the child by saying the child ran or walked in front of the cab so suddenly that the accident was then unavoidable." Such an instruction would have been unobjectionable, *Henkelmann v. Insurance Co.,* 180 Md. 591, 596, 26 A. 2d 418, *Miller v. Graff,* 196 Md. 609, 616, 78 A. 2d 220, and would not have interjected the formal, legal concept of an unavoidable accident into the case, although it contains the terms upon which the appellants base their complaint.

Maryland Rule 554 c provides that: "An oral instruction need not comply with the technical rules as to prayers." Judge Morris A. Soper, one of the most eminent and distinguished jurists of our time, in discussing Maryland Rule 554 said:

> "Nor will it be too difficult for the judge * * * to state the law of the case in plain and simple terms far more helpful and intelligible to the jury than the technical, hypothetical and sometimes verbose instructions with which for the past century Maryland jurors have been served. * * * The jury will more easily understand and more readily apply the rules of the law if they are couched in simple colloquial terms, with appropriate illustration and application to the facts of the controversy." [3]

And this Court, speaking through Chief Judge Marbury in the case of *Bull Steamship Lines v. Fisher,* 196 Md. 519, 529, 77 A. 2d 142, stated: "The purpose of oral charges is to tell the jury in simple words what the law is in a case before them, and we will not be too particular in criticising the words used if the result is sufficient." The same statement was reiterated by Judge Hammond, for the Court, in *West v. Belle Isle Cab Co.,* 203 Md. 244, 251, 100 A. 2d 17.

For the reasons stated above, we hold that the trial court's

---

**3.** Soper, The Charge to the Jury in Maryland Under the New Rules of Practice and Procedure, 6 Md. L. Rev., 35, 37, 43.

instructions, when considered as a whole, were not misleading, and they fairly and adequately covered the appellants' theory of the case.

The appellees raise two questions: one, that their motion for a directed verdict should have been granted; and the other that the plaintiff's objection to the court's charge with regard to an unavoidable accident was not properly reserved. We find it unnecessary to pass upon the first objection above stated.

As to the second of the above objections a narrow line divides this case from *Belt's Wharf Warehouses, Inc. v. International Products Corp.,* 213 Md. 585, 132 A. 2d 588, in which, at pages 591-592, exceptions based upon a refusal to grant certain prayers referred to only by number were held insufficient under Rule 554 d of the Maryland Rules. Here the statement of the objection appears somewhat more informative in that it does refer in terms to the subject matter of the exception. It did serve to direct the trial judge's attention to a specific portion of the instructions, and it may be argued that implicit in the objection itself is the reason for it here asserted, that the charge omits the legal definition of the term. We do not wish to emasculate any of the provisions of Rule 554 d, nor, on the other hand, do we think that the rigor of the Rule as expounded in the *Belt's Wharf* case should be made more severe. We have given the appellants the benefit of any doubt in treating their exception as sufficient to present the objection. On that assumption, we have found the exception to be without merit. The long and short of it is that the court's instructions did not amount to an unavoidable accident instruction in the conventional sense and consequently there was no need to give the conventional, legal definition of an unavoidable accident.

*Judgment affirmed, with costs.*