## JAMES MOSES *vs.* EDWARD M. ALLEN, JR.

*Construction of a Contract—Instructions to the Jury—Argumentative Plea—Form of Ruling on Special Objection to Prayer for Lack of Evidence in Support.*

A contract between defendant, the owner of a flint mill and quarry and also of a pottery, and plaintiff, provided for a lease for five years and for a sale thereafter of the quarry to plaintiff. According to one paragraph of the contract, defendant agreed to purchase 800 tons of ground flint during each year of the lease for use in his pottery, and according to another paragraph it was provided that if the defendant should not be able to take so much as 800 tons of ground flint per year then the plaintiff should only be required to pay a certain sum for the flint taken by him from the quarry. Defendant failed to take 800 tons of flint per year and plaintiff sued for breach of the contract. At the instance of the defendant the jury were instructed that he was not bound to take any more flint than he could profitably use in the reasonable conduct of the business of his pottery, and was not bound to enlarge that business in order to take more. At the request of the plaintiff the jury were instructed that if the defendant's failure to take so much as 800 tons of flint per year was because he was unwilling to sell at a smaller profit than he had been getting before that time, then the diminished profits furnish no excuse for said failure if the jury should find that he could still have sold the goods by accepting smaller profits. *Held*, that the

two instructions taken together properly instructed the jury as to the law of the case and that there was evidence legally sufficient to support the plaintiff's prayer.

When a plea is prolix and argumentative and cannot be traversed except by a replication of like character, a demurrer to it is properly sustained.

The objection that there is no legally sufficient evidence to support a prayer which is granted, need not be made in writing, nor is it necessary that it form the subject-matter of a separate bill of exceptions. A statement in a bill of exception containing the ruling on all the prayers that "when the plaintiff's fourth prayer was offered the defendant objected to its being granted, both generally and because there was no legally sufficient evidence to sustain it," clearly shows that the objection was made at the trial and passed on by the Court, and is a compliance with the Code, Art. 5, sec. 9, which provides that no question shall arise in the Court of Appeals as to the insufficiency of the evidence to support a granted instruction, unless it appear that such question was distinctly made to, and decided by, the Court below.

Appeal from the Circuit Court for Baltimore County (Burke, J.)

The cause was argued before McSherry, C. J., Fowler, Pearce, Schmucker and Jones, JJ.

*Albert Constable* and *James J. Archer* for the appellant.

The plaintiff's fourth prayer should not have been granted. It declares that the defendant was bound to take eight hundred tons of ground flint per year, " if the jury should be of opinion that he could have sold the goods by accepting smaller profits." Therefore, the proposition announced by the instruction is, that if the sales are upon the profit side of the line—no matter how ridiculously insignificant—one per cent or one-half, or one-quarter per cent, so long as there was a conceivable margin of profit—Mr. Moses was bound to run his pottery and take eight hundred tons of Allen's flint. But such a proposition is absurd. In earthenware, ground flint constitutes, in bulk, between one-third and one-half of the manufactured article, while it constitutes, in value, about five per cent. That Mr. Moses should

be compelled to run the Mercer Pottery to its full capacity —a plant in which was invested $300,000—and employ besides a large capital, in labor and in material, in order that he might be able to take eight hundred tons of ground flint per year from Allen, provided he would sell his goods at *any* profit is ridiculous, both in a business sense and as a proposition of law. Mr. Moses was bound, of course, to take from Allen all the ground flint he could use in the reasonable and proper conduct of his business. That is the standard—what he could use *in the reasonable and proper conduct of his business.* And such was the standard which was given to the jury in this case by defendant's 9th prayer which the Court granted.

Conceding, for the sake of the argument, that the defendant could have sold all the goods up to the full capacity of the Mercer Pottery to manufacture them, at a profit, still, he was not *necessarily* obliged to so conduct his business. Such might not, under the circumstances, be reasonable or proper business conduct. For illustration, suppose in the years of 1893, 1894 and 1895 it had been possible (contrary to all the testimony in the case) for Mr. Moses to have run his factory at its full capacity and, by underselling all his competitors, to have made a profit, such conduct on his part, in thus breaking down the market where his future business " must live or bear no life," would not have been reasonable or proper conduct, though the profit might have been good. It would have been a clear case of business suicide. Had Allen the right to demand that? Conceding Moses a possible and reasonably fair profit—a temporary profit—in the sale of a business thus conducted, can Allen seriously contend, that Mr. Moses had come under any such obligation to him or owed him any such duty? Every business and professional man, besides his ordinary obligations, owes a duty to his business or profession not to destroy or discredit that business by practices yielding possibly a temporary advantage but, in the end, ruinous to it. And no vendor, with a contract to supply a manufacturer,

or other consumer of raw material, with the quantity he can *use in his business*, has a moral or legal right to demand that the quantity taken shall exceed the *legitimate* demands of the business reasonably and properly conducted. We submit, therefore, that the legal proposition embraced in plaintiff's 4th prayer is erroneous.

If, however, we should concede that the legal proposition contained in plaintiff's 4th prayer was correct, still, it is in conflict with defendant's 9th prayer. And it is error for a trial Court to grant conflicting instructions to a jury. *B. & O. R. R.* v. *Blocher*, 27 Md. 277; *Young* v. *Mertens*, 27 Md. 114; *Adams* v. *Capron*, 21 Md. 186.

There is, in addition to what we have already pointed out, this fatal objection to the defendant's 4th prayer. There was not, in the whole case, a particle of evidence to sustain it. It should not, therefore, have been granted, even conceding that it contained a correct proposition of law.

But, even if we concede, for the argument, that the legal proposition contained in the plaintiff's fourth prayer is correct, and if we concede, further, that there was evidence legally sufficient to sustain it, still we affirm, with entire confidence, that there was error in granting it in the circumstances of this case. As the case stood when it was offered, and as it had been fought out by both sides, a more misleading instruction to the jury could not have been possibly given, even conceding it to have been unimpeachable in point of law. In *Washington Ins. Co.* v. *Davison & Symington*, 30 Md. (at p. 108), Mr. Justice Miller speaking of an instruction of this character said this: " The prayer was, therefore, correctly rejected, because of its *misleading tendency* in this particular, *no matter how correct it might have been in other respects.*" By the rulings of the Court upon the pleadings, the case had narrowed down to the question " Did Mr. Moses take all the ground flint he was able?" And that question had been narrowed down to this : " Did he take all the ground flint he could use in his business?" And this last question depended upon whether he could sell of

the manufactured earthenware a quantity sufficient to absorb 800 tons of ground flint (which was proved to be the full capacity of his works) in its manufacture. Upon this question Mr. Moses and the treasurer of the company had sworn they had sold all the goods they could possibly dispose of, and they had explained the causes which had destroyed the market. Their testimony was uncontradicted and unimpeached. Besides this, the correspondence between the plaintiff and defendant and the treasurer of the company during the years 1893, 1894 and 1895, had shown that the plaintiff had been fully and frankly informed *at the time* of the conditions, and it was proved also that the plaintiff knew those conditions of himself. During the reception of this evidence the plaintiff had gone, at great length, into the capacity of defendant's works; into their storage capacity; into the particulars of a strike which had occurred among the workmen and its effect upon Mr. Moses, and whether he could not have prevented it or secured workmen, notwithstanding; into the feasibility of enlarging the storage capacity; into whether the defendant could not have disposed of more goods by manufacturing a cheaper or different variety, &c., &c. The plaintiff himself testified fully on these matters. *But there was no contention nor suggestion that he could have " sold more goods by accepting smaller profits."*

*D. G. McIntosh* and *George L. Van Bibber*, for the appellee.

There being no exception to testimony, and the Court having granted all the instructions asked for by the defendant, and rejected all the plaintiff's instructions except the fourth, the propriety of that prayer is the only thing left to consider. When the Court sustained the defendant's second plea, that he was unable to take so much as 800 tons of ground flint in any one year, and the plaintiff traversed the plea, of course it put in issue the truth of that plea, and the defendant's first, second, third and ninth prayers, granted by the Court, left it to the jury to say

whether or not the plaintiff was able to take so much as
800 tons of ground flint a year; the second prayer putting
it that he was only bound to accept so much ground flint
as he was able to take; or, as stated in the third prayer, so
much as he could profitably use in said business; or, as
stated in the ninth prayer, so much as he could use in the
reasonable and proper conduct of said business. The two
last prayers, third and ninth, contained similar propositions
to the plaintiff's fourth; they involved the question of profit;
and all involved the real and not the fancied ability of
defendant to carry out his contract. His mere dictum that
he was not able to take 800 tons was not conclusive upon
the plaintiff. The latter had the right to prove so far as he
could the real situation of defendant, the character of his
business and the truth of his assertion. The reason defend-
ant gave was simply a general depression of business and
that he couldn't make sales. But the making of sales of a
product like this must depend upon the prices asked as well
as the market conditions. That the defendant was reaping
a large profit from the business is shown by his testimony
when examined, that he was the only stockholder of the
Mercer Pottery Company, to which plaintiff shipped the
flint in question, and that the capital stock of said company
was $50,000, and the profits of the concern in the year
1893 were from $35,000 to $37,000, which would be a
profit of nearly 80 per cent upon his capital. Witness ex-
plained, however, that it would be unfair to look at it in
that way, because the surplus profit was continued in the
business, and he left a large part of the earnings in it, and
that the earnings so invested make the improvements and
plant now worth $250,000, in spite of the fact that he suf-
fered a loss in one year (of the twenty-five years he has
been in business, without specifying the year) of $18,000,
and that part of the earnings was reserved.

That the amount of sales depended in large measure upon
the profits, and that a smaller profit would enlarge the sales
and enable defendant to take more flint is admitted by de-

fendant's bookkeeper. When asked if the sales did not depend upon the profits made, he replied, "the sales depended upon the ability to sell the goods at current profit, and the sales had to be made at competing prices or no sales;" and "the price, therefore, entered into the estimate of sales." Now the profits which the defendant was in the habit of realizing from the business being proved to be large, and it being further shown that the price constituted an important element of sale and production, it appeared that the defendant made little, if any, concession in price to augment his sales.

SCHMUCKER, J., delivered the opinion of the Court.

This appeal brings up for review the action of the Circuit Court for Baltimore County in granting the fourth prayer of the appellee, who was plaintiff below, and in sustaining his demurrer to certain pleas filed to the amended declaration.

The facts material to the controversy may be stated as follows: The appellant, who is an earthenware manufacturer residing in New Jersey, owned a flint mill and quarry in Harford County, from which he procured ground flint for use in his factory. On May 6th, 1893, he made a contract with the appellee for an immediate lease and an ultimate sale to him of the flint mill and quarry. This contract appears from two papers executed at the same time, one of which is in the nature of a lease and the other is an agreement for the sale and purchase of the leased property.

The general scheme of the transaction was that the appellee should rent the property for five years, and during that period the appellant should purchase a portion of each year's output of flint and should retain part of the price therefor and apply it on account of the purchase money for the property. At the expiration of the five years the appellant was to convey the entire property to the appellee, who was then to give him a mortgage thereon for such balance of the purchase money as had not by that time been paid by the amounts to be retained from the price of the flint

furnished him during the five years.    The appellee was also
to have the privilege of paying this balance of the purchase
money for the property in flint.    He was in the meantime
to pay interest on the purchase-money, and also the taxes
and insurance on the property, and keep it in repair.    The
amount to be paid for the property was $12,000.

The terms and provisions of the two papers constituting
the contract are appropriate to the transaction and consistent
with each other except that, while the second paragraph of
the lease contains a positive undertaking by the appellant to
purchase from the appellee 800 tons of ground flint in each
and every one of the five years of the lease, the 13th para-
graph provides that if the appellant should "not be able to
take so much as 800 tons of ground flint per year then the
said E. M. Allen (the appellee) shall only be required to
pay an amount in flint or cash equal to fifty cents per ton
for what flint he takes from the quarry each month."

The appellant contended that the 13th paragraph was
intended to relieve him from his obligation to take 800 tons
of flint per year and to regulate the method of paying the
purchase-money for the property in case he took less than
that amount of flint.    The appellee, on the contrary, insisted
that the appellant was by the second paragraph of the lease
under a positive obligation to purchase the 800 tons per
year, and that the whole purpose of the 13th paragraph
was to give to the appellee the right to pay for the property
by a royalty on its annual output of flint in case of a breach
by the appellant of his promise to take the 800 tons per
annum.

The appellant not only failed to purchase the 800 tons of
flint per year, but took only 738 tons of it in the first three
years of the lease, asserting that he could not use a larger
quantity in his business owing to the depression in trade, &c.

The appellee sued the appellant for breach of the con-
tract, and attached the flint mill and quarry.    The suit was
instituted in Harford County and was moved to Baltimore
County where the trial occurred.

Before issue was finally joined in the case there were a number of amendments to the pleadings and demurrers were filed by each party to certain of the pleadings of the other, but the only question arising upon the pleadings, which the record presents for our consideration, is the action of the Court in sustaining the demurrer of the appellee to the first, fourth and sixth pleas to the amended declaration.

The first plea set up the single defense that the appellant had been unable to take of the appellee as much as 800 tons of ground flint in any one year since the making of the contract, but the plea included a rehearsal, covering two full pages of the record, of the reasons why he could take no more. These reasons included the want of storage capacity, the depressed state of the market, the probable action of the Federal Government in reducing the tariff, and similar matters, actual and contingent, which were properly matters, so far as they were admissible in the case, not of pleading but of evidence. The plea in the form in which it was tendered was prolix and argumentative. It could not have been traversed except by a replication of like faulty character, and the demurrer to it was properly sustained. 1 *Chitty on Pleading,* \*566; *Mitchell* v. *Williamson,* 9 Gill, 78; *Gott* v. *State, use of Barnard,* 44 Md. 336–7. Even if the Court erred in its ruling upon the demurrer to this plea, no injury was done to the appellant, because his second plea, which the Court sustained, and on which the issue was finally joined, set up the same defense in clear and simple form, and in the testimony he got the benefit of the evidence which he was able to produce touching the facts alleged in his rejected plea.

At the trial of the case the appellee, as plaintiff, offered eight prayers and the appellant offered nine. The Court entertaining the view of the true meaning of the contract contended for by the appellant, granted all of his prayers and rejected all of the appellee's prayers except the fourth, which it granted. The appellant excepted specially to this fourth prayer, because there was no legally-sufficient evi-

dence to sustain it, and also excepted to the action of the Court in granting it.    The prayer in question is as follows :

" That if the failure of the defendant to take so much as eight hundred tons of ground flint per year was because the defendant was unwilling to sell at a smaller profit than he had been getting before that time, then the diminished profits furnish no excuse for said failure, if the jury should be of opinion that he could still have sold the goods by accepting smaller profits."

The only substantial defense to the action was that the appellant was unable to take 800 tons of flint per year.    He himself testified that in 1892 and the early part of 1893 his business was prosperous and he was then using about that amount of flint ; but the business fell off shortly afterwards to such an extent that he could not sell goods enough to enable him to consume more flint at his factory than he in fact took from the appellee.    He ascribed his inability to sell more goods to the state of the market, the silver panic, the anticipated tariff reduction and like causes.    He also testified that in 1893 the factory made about $37,000 profit on an investment of capital and surplus amounting to $300,000, and stated in some detail the amount of his business for each year from 1893 to 1897.

William B. Allen, a witness for the appellant, who had been the treasurer and bookkeeper at his pottery works for seventeen years, and was evidently quite familiar with the business there carried on by the appellant, also testified as to the falling off in the amount of the sales at the works from the year 1893 on.    He was asked whether the extent of the appellant's sales did not depend upon the profits he made ; to which question he replied : " The sales depended upon the ability to sell the goods at current profits."

The defendant's second, third and ninth prayers, all of which the Court granted, were as follows :

2nd. That by the true construction of the contracts dated the 6th of May, 1893, and offered in evidence by plaintiff,

the defendant was not bound to accept 800 tons of ground
flint, or any other certain number of tons in any one year.
He was only bound to accept so much ground flint as he
or the Mercer Pottery was able to take.   And if the jury
find that at the date of said contracts, the defendant was the
owner and operator of the Mercer Pottery, and was there
engaged in the manufacture of earthenware, and that the
said contracts were intended to provide for the purchase of
ground flint to be used in the Mercer Pottery in the manu-
facture of earthenware, and that this was known to the
plaintiff, Allen, at and before the 6th of May, 1893, then
the defendant, Moses, was not obliged by said contracts
to take of the plaintiff any more ground flint than he could
use in his said business there carried on.

"3rd. If the jury find the facts stated in the next preced-
ing prayer, then the jury is instructed that the defendant
was not obliged to enlarge his works or said business in
order to take more ground flint than he could profitably
use in said business as it was carried on at the time said
contracts were made, dated the 6th of May, 1893.

"9th. If the jury find that, at the date of the con-
tracts offered in evidence by the plaintiff, namely, 6th of
May, 1893, Mr. Moses was the owner and operator of the
Mercer Pottery, and was there engaged in the manufacture
of earthenware, and that said contracts were intended to
provide for the purchase of ground flint to be used in the
manufacture of said earthenware, and that this was known
to Mr. Allen, the plaintiff, and further find that Mr. Moses
took of Mr. Allen, and paid for, all the ground flint he
could use in the reasonable and proper conduct of his said
business, then the verdict must be for the defendant,"

Now whatever may be said of the plaintiff's fourth prayer
standing alone as a single proposition of law, we think when
the Court at the instance of the appellant granted the three
foregoing prayers, it was proper to grant the appellee's
fourth prayer along with them.   The prayers which were
thus granted, when considered together, as they should be,

put the law of the case to the jury in a manner which did full justice to the appellant and we think that there was sufficient evidence in the case to support the appellee's fourth prayer when so taken and considered.

The appellee contended that the special exception of the appellant to the fourth prayer was not properly taken to entitle it to be considered by this Court.

There is but one bill of exceptions in the record and that is based on the action upon the prayers. In the certificate to this bill of exceptions, which is signed and sealed by the Judge, it is stated : "When the plaintiff's fourth prayer was offered the defendant objected to its being granted both generally and because there was no legally sufficient evidence to sustain it," and also that he excepted to the action of the Court in granting the prayer. This we think makes it plainly apparent from the record that the special objection was made at the trial and passed upon by the Court. It is not essential that the special objection should be made in writing or that it should form the subject of a separate bill of exceptions. If it appear by a certificate under the hand and seal of the Judge who tried the case, such as is found in the present record, that the special objection was in fact made by counsel and passed upon by the Court it is sufficient. *Albert* v. *State*, 66 Md. 334. The judgment will be affirmed with costs.

*Judgment affirmed.*

(Decided March 21st, 1900.)