S. TRUSIL MULLIKIN, Infant, by Samuel E. Mullikin, His Father and Next Friend,

*vs.*

THE MAYOR AND CITY COUNCIL OF BALTIMORE,
A Municipal Corporation.

*Municipal corporations: negligence of agent; burden of proof;
taking case from jury.*

In actions for damages for injuries caused by the alleged negligence of an agent of the defendant, it was *Held,* that in the absence of any evidence of any act or omission on the part of such agent of a character to constitute actionable negligence prayers taking the case from the jury ought to be granted.
p. 367

Objections can not be heard in the Court of Appeals to the granting of a prayer submitting to the jury the question of contributory negligence on the ground of insufficiency of evidence to sustain such a prayer, unless such objections are first raised in the trial Court.     p. 365

*Decided November 14th, 1917.*

Appeal from the Court of Common Pleas.   (Stump, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER and STOCKBRIDGE, JJ.

*Wm. H. Surratt,* for the appellant.

*R. Contee Rose, Assistant City Solicitor,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

On October 23rd, 1914, between the hours of four and five in the afternoon the infant plaintiff (appellant here) was playing hockey with a number of companions in the bed of Windsor avenue, a public highway of Baltimore City.

At the same time H. Nelson Gambril, an inspector in the office of the water engineer of the city, was returning to his home on a motorcycle, at a speed of between five and seven miles an hour, having completed his day's work. His route lay along Windsor avenue. As he approached the group of boys, of which the plaintiff was one, he reduced his speed, sounded his horn and called out to the boys who were before him. The plaintiff apparently did not hear him, nor the warning of his approach given by some of the plaintiff's comrades.

Gambril endeavored to avoid colliding with the plaintiff by swerving the course of his machine, but when not more than three or four feet from the plaintiff, the latter jumped directly in front of the machine, and in endeavoring to avoid striking the lad Gambril again changed the direction of the machine, but the left handle bar hit the boy, throwing him to the pavement, where he struck his head and was severely injured. To recover damages for that injury this suit was brought.

The record is chiefly noteworthy for the fact that there is no conflict of evidence presented.

The sole exception is a blanket one to the ruling of the Court on the prayers.

The ground mainly relied on by the appellant is the alleged error of the trial Court in submitting to the jury the

question of contributory negligence in the 5th, 7th, 8th and 10th prayers.

The record does not disclose any objection taken in the trial Court such as that now presented here. Certainly no special exception was reserved upon the ground of the lack or insufficiency of evidence tending to show contributory negligence.

The Code provides (Art. 5, sec. 9) : "Nor shall any question arise in the Court of Appeals as to the insufficiency of evidence to support any instruction actually granted, unless it appear that such question was distinctly made to and decided by the Court below." This section has been frequently applied by this Court. *Gunther* v. *Dranbauer,* 86 Md. 1; *Sturtevant* v. *Dugan,* 106 Md. 615; *Stewart Taxi Serv. Co.* v. *Roy,* 127 Md. 79. If there was no other reason, the judgment appealed from would have to be affirmed.

There is another and controlling reason which leads to the same result. The first two prayers offered on behalf of the City asked for a directed verdict for the defendant; the first being in form a general demurrer to the evidence, and the second to the like effect, upon the specific ground of the failure to show any act of negligence such as to warrant the submission of the case to the jury.

These prayers were refused by the trial Court. This was error, but not such error as involves any reversal of the judgment.

As has already been said there is no real conflict in any of the evidence as to the way in which the accident occurred. The plaintiff himself on the stand testified, that he did not remember anything about the accident; that he did not recollect hearing a motorcycle approach, by the blowing of a horn, or any signal or bell given, nor did he hear the man on the motorcycle or anybody call out to him.

Gaskins, one of the boys who was playing with the plaintiff, testified that he heard the toot of the horn, that the motorcycle was running between five and seven miles an hour, that the plaintiff got hit on the hand by a hockey stick,

dropped his own stick and was holding his own hand as the motorcycle approached, and that the plaintiff had his back to the motorcycle, that he would not say that the plaintiff did not see the motorcycle as it approached him, that immediately after the collision the machine went down an embankment on the side of the street, that Gambril immediately dismounted and came up to where the plaintiff was lying.

Jett, a witness called by the plaintiff, testified that Gambril before reaching the plaintiff had slowed down to between four and five miles an hour, that when he saw the plaintiff was in his path, he turned out towards the left side of the street, and just as he turned the plaintiff jumped towards the middle of the street, and he (Gambril) made every effort in the world to get out of the way of the plaintiff, turned again to the right and threw the machine and himself through an opening in the curb down the embankment, that the plaintiff always had his back towards the motorcycle. This witness does not recall hearing a horn blow, but did hear the boys with whom he was playing say, here comes a motorcycle; this was before the plaintiff was struck; that the plaintiff jumped right in the way of the motorcycle.

The witnesses Auer, Wellman, Rauch and Autz all testified to substantially the same condition.

Gambril when called to the stand testified to the collision, and that he was going at the rate of five or six miles an hour at the time of the accident; that as he approached the group of boys he was blowing his horn almost continuously, and in addition called out to the boys who were playing polo in the street, to look out. That the witness thought that the warnings were heard by the boys, but that the plaintiff jumped directly in the path of the machine which struck him a glancing blow on the right side.

Dewey Wilson, called by the defendant, was on the open lot some little distance from the group of boys in the street, he saw the motorcycle approaching, heard the horn sounded, and heard some one holler. He estimated the speed of the motorcycle at from five to seven miles an hour.

The substance of the evidence has thus been stated with some particularity, because it clearly shows that Mr. Gambril did everything that he could, or could have been expected to do, for the purpose of avoiding the accident, and that there was no act or omission on his part of a character to constitute actionable negligence.

The case, therefore, falls directly in line with the case of *Havermale* v. *Houck,* 122 Md. 82, and the authorities there cited, and no error would have been committed had the trial Court directed a verdict for the defendant.

The case was, however, submitted to the jury which brought in a verdict for the defendant, so that the error of the Court in rejecting the first and second prayers of the City became harmless error, and the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*