## STATE, USE OF WHITAKER v. GREAVES
[No. 41, October Term, 1948.]

*Decided December 15, 1948.*

The cause was argued before MARBURY, C. J., DELAPLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Edward J. Ryan* and *William L. Wilson, Jr.*, for the appellant.

*Leslie J. Clark* and *Evan McC. Crossley* for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This is an appeal from a judgment on verdict in favor of defendant for costs in a case brought in the Circuit Court for Allegany County under the Maryland Lord Campbell's Act, Code Article 67. As originally filed, the suit was for the use of Edna Whitaker and Phylis

Whitaker, daughter and granddaughter of Clarence Whitaker, the deceased. Phylis Whitaker is the illegitimate daughter of Edna Whitaker. The defendant demurred to the declaration, the demurrer was sustained, and, thereafter, an amended declaration was filed leaving out Phylis Whitaker as an equitable plaintiff. A plea was filed to this declaration, and the case was tried on these pleadings.

The facts show that the deceased, Clarence Whitaker, was walking on a public highway near the foot of Big Savage Mountain, facing traffic coming down the mountain. The defendant, who was a resident of Columbus, Ohio, was coming from that town to the City of Washington, and drove east over the top of Big Savage Mountain, and in response to a sign there stating that there was a mile and a half down-grade, to descend in second gear when the road was wet, and to use brakes only to save speed, he put his car in second gear, but about half way down the mountain, he took it out of second gear and put it in high. The road was snowy, but had been cindered. He saw the deceased walking along the edge of the road and close to the bottom of the hill. The car started to slide sideways just before he reached Whitaker, and although the appellee tried to straighten it out, it turned completely around and went sideways off the highway and hit a telephone pole. In the course of so doing it hit Mr. Whitaker, who was thrown in a ditch on the side of the road. He was taken to a hospital, but died shortly afterwards. There was one witness who saw the accident. He was in front of a shop about three or four hundred feet from the place where it occurred. He heard a noise, looked up, and said he saw Mr. Whitaker flying through the air about six feet off the ground. He said he thought he was thrown about twenty feet. He said the road was "pretty slick". A man who was passed by the defendant at the top of the mountain, said that the road was slippery, and he had on chains, which the defendant did not. He noticed that the defendant was driving, he thought, a little fast for the condition of the road. He did not see the accident. The highway was

47 feet wide at the place of the accident with an additional four foot shoulder. The telephone pole where the appellee's car came to rest was about four feet to the right, and the ditch in which the deceased was thrown was back of the telephone pole which would be about 15 feet from the edge of the shoulder.

The case was tried by the old method of ruling on prayers without an oral charge. We cannot refrain from the comment that we think much of the difficulty in this record would have been avoided had the judges used the more modern method, now generally in use. The defendant's eighth prayer, granted by the court, was a contributory negligence prayer, and his twelfth prayer, also granted, was an unavoidable accident prayer. The appellant assigns five errors. First, the illegitimate granddaughter was not permitted to remain as one of the equitable plaintiffs. Second, there was no sufficient evidence to justify the granting of a contributory negligence prayer. Third, there was no sufficient evidence to justify the granting of an unavoidable accident prayer. Fourth, the unavoidable accident prayer granted was misleading, and fifth, improper action by the appellee's counsel.

The first question is not before us. When the declaration was amended to leave out the granddaughter, she was out of the case. The case with which we are concerned is that which was tried, and which had only the daughter as an equitable plaintiff. There is nothing before us with respect to the right of the granddaughter to sue.

The second question relates to the sufficiency of the evidence to justify the granting of a contributory negligence prayer. Under the statute, Art. 5, Sec. 10, which was Rule 4 of this court, it was formerly provided that no question should arise here as to the insufficiency of evidence to support an instruction actually granted, unless it appeared that such question was distinctly made to and decided by the court below. This clause was an addition to the statute as it originally stood, and it was discussed at length by Chief Judge McSherry in the case

of *Gunther v. Dranbauer,* 86 Md. 1, at pages 9, 10 and 11, 38 A. 33, and has been applied by this court in many cases since. It was specially applied to a contributory negligence prayer in *Mullikin v. Mayor & City Council of Baltimore,* 131 Md. 363, 102 A. 469. The method of showing that the point was made to and decided by the court below did not have to be by a written exception. *Moses v. Allen,* 91 Md. 42, at page 43, 46 A. 323; *Davidson Chemical Co. v. Andrew Miller Co.,* 122 Md. 134, at page 139, 89 A. 401; *Kahn v. Carl Schoen Silk Corp.,* 147 Md. 516, 128 A. 359, 44 A. L. R. 285.

Among the General Rules of Practice and Procedure adopted by this Court in 1941, under Rules Applicable to Law Only, is Rule 6(d), Code Supplement 1947, page 2051 dealing with Instructions to the Jury. By this rule it is provided that on appeal a party, in assigning error shall be restricted to the particular portion of the instructions given or the particular omission therefrom and the specific grounds of objection distinctly stated at that time and no other errors or assignments of error shall be considered by the Court of Appeals. Rule 11(c) dealing with the Effect on Existing Laws, 1947 Supplement, page 2053, states that Rules 6 and 9 (the latter dealing with trials by the court), supersede Section 10 of Article 5 except the first clause.

We revised some of the Rules Respecting Appeals in 1945. One of the rules changed was Rule 4. As amended and as it now stands under its new number (Rule 9), all but the first clause has been omitted. Code 1947 Supplement 1993. At the same time we adopted Rule 17 which abolished formal exceptions, and in Rule 17 it was stated that it is sufficient if a party at the time the ruling is sought makes known to the court the action which he desires the court to take and *his grounds therefor.* Code 1947 Supplement 1995. The regrouping and rewording of the rules did not change the previous requirement that where it is proposed to rely on the insufficiency of evidence as a reason for objecting to the granting of a prayer, the party objecting must make known that spe-

cific objection to the court below if it is to be considered here. It does not appear from the record in this case that this question was brought to the attention of the court below at the time the prayer was offered and granted. There is, therefore, no compliance with Rule 17 of the Rules Respecting Appeals or Rule 6(d) of the General . Rules of Practice and Procedure Applicable to Law Only, and there is nothing before us on this point which we are at liberty to consider.

The third question involves the sufficiency of the evidence to justify the granting of the Twelfth Prayer which permits the jury to consider whether the death of Whitaker was a result of an unavoidable accident. The same rule which we have shown is still applicable to a contributory negligence prayer also applies to an unavoidable accident prayer, but with respect to this prayer, we have in the record an opinion by the judges who heard the case below which was filed with their order, refusing to grant a new trial. At the hearing of the motion for a new trial, the appellants apparently stressed the form of an unavoidable accident prayer, but the court pointed out that the "objection to the prayer at the time was that this was not the type of case in which such a prayer was proper, not as to the exact form of it or because there was a lack of explanation of what the law regards as an unavoidable accident." We have, therefore, in the record what amounts to a certification of the trial judges, that the plaintiff objected to the prayer *at the time it was offered* on the ground that it was not proper in this case, which could have been only because there was no evidence to support it. We think this certification brings the third question before us for review.

The trial court said "Unless the law is that every skid must be considered as due to negligence, it would seem proper to let the jury decide whether this was due to negligence or whether it was unavoidable under all the facts in this particular case." The learned court did not look behind the skidding to what caused it. Mere skidding is not evidence of an unavoidable accident. In

this case the facts do not tend to show that the appellee had his car under such control as was required of him under the conditions under which he was traveling. Perhaps there was nothing the appellee could do when his car started to skid, but there is nothing to show that the car would have skidded had he obeyed the sign at the top of the mountain and kept his car in second gear all the way down. Unless there is something in the evidence showing that this accident could not have been foreseen and prevented by vigilant care and attention an unavoidable accident prayer would lead to mere speculation. The case is quite similar to the recent case of *Fogle v. Phillips*, 191 Md. 114, 60 A. 2d 198, where we held that there was no dispute about the facts, and assuming the truth of defendant's testimony, there was nothing from which the jury could conclude that the accident was unavoidable. In the instant case, the entire testimony about the skidding comes from the defendant himself. He states that half way down the mountain he took his car out of second gear, the road was snowy, although it had been cindered, that he could not tell how fast he was going when the car started to turn sideways and that he thought it was at a slushy place in the snow. This undisputed testimony does not give rise to any inference that the accident could not have been avoided by care exercised before the slushy place was reached. The jury should not have been allowed to guess about it. We think the twelfth prayer had no place in the case, and was erroneously granted.

The prayer is also subject to criticism on account of its form. The prayer as granted reads as follows: "The Court instructs the jury that if they shall believe that the death of Clarence Whitaker, the father of the equitable plaintiff, was the result of an unavoidable accident, unmixed with negligence on the part of the defendant, their verdict shall be for the defendant." This prayer is misleading because it does not tell the jury what are the elements of an unavoidable accident. More than 50 years ago Judge McSherry in the case of *Washington,*

*C. & A. Turnpike Co. v. Case,* 80 Md. 36 at pages 45 and 46, 30 A. 571, 573, defined an unavoidable accident as "an inevitable occurrence, not to be foreseen and prevented by vigilance, care and attention, and not occasioned or contributed to, in any manner, by the act or omission" of the defendant. In *Leland v. Empire Engineering Company,* 135 Md. 208, 108 A. 570, 575, it was said, after some discussion, that under the circumstances of that case an unavoidable accident prayer which did not define the term should not have submitted to the jury "simply whether it was an unavoidable accident with no instructions as to what was so regarded in law, or whether the defendant's negligence combined with the accident." The concluding part of the prayer granted in that case asked the jury to find in the alternative to an unavoidable accident whether the injury "was occasioned in any way by the want of due care on the part of the plaintiff." This prayer, therefore, was a combination of an unavoidable accident prayer and a contributory negligence prayer, and as to the last part the court said that is was not in accord with the established practice in the state, although it would not be inclined to reverse the judgment by reason of that alone. The court said that the prayer was liable to mislead the jury by merely stating a proposition of law without informing them what the law regards as an unavoidable accident, and found error in granting this fourth prayer for that reason. In *Kaline v. Davidson,* 146 Md. 220, 126 A. 68, 69, the defendant's second prayer authorized the jury to find for the defendants if they found that the collision was "due to an unavoidable accident unmixed with negligence on the part of either" the defendant or the plaintiff. There was a special exception filed to this prayer on the ground that the evidence tended strongly to prove the collision was avoidable. The court said that, after reviewing the evidence, it could not say that it excluded all possibility of the theory of unavoidable accident, and it held that there was no error in the granting of the prayer. It does not appear, however, that in that case the court considered the form of

the prayer. In the case of *State for Use of Shipley v. Lupton,* 163 Md. 180, 161 A. 393, the defendant's second prayer was similar to the prayer offered in the instant case, with the addition of a definition of what negligence meant. A special exception was filed to this prayer, and the court said that it found no reversible error in its granting because, although it was difficult, it was not impossible to conceive of the accident in that case as being unavoidable. It was also noted that the form of the prayer had been approved in two earlier cases, *Lavine v. Abramson,* 142 Md. 222, 120 A. 523 and *Kaline v. Davidson, supra.* It does not appear that any objection was made in *State for Use of Shipley v. Lupton* to the form of the prayer. A reference to *Lavine v. Abramson* shows that the fourth prayer in that case was the same as one approved in *Sullivan v. Smith,* 123 Md. 546, 91 A. 456. It does not appear in *Lavine v. Abramson* that any objection was made to the form of the prayer. In *Sullivan v. Smith,* 123 Md. 546, 91 A. 456, the defendant's first prayer was similar to the one granted as the twelfth prayer in the instant case, and it was stated that the prayer was not objected to, so that in none of the cases cited as authority in *State for Use of Shipley v. Lupton* was the form of the prayer approved after objection. In the case of *Paolini v. Western Mill and Lumber C.,* 165 Md. 45, 166 A. 609, which was reversed for rulings on other prayers, the court said that the defendant's second prayer, which was that if the jury found from the evidence that the injury complained of resulted from an unavoidable accident, then the verdict must be for the defendant, should not have been granted. It stated that it is often used and in some cases is approved, but whether it should be granted in any case, depends on the facts in the case. It quoted the statement from Chief Judge Boyd in *Leland v. Empire Engineering Company, supra,* that the prayer was liable to mislead the jury by not informing them what was regarded as an unavoidable accident, and it also quoted the definition of an unavoidable accident by Judge McSherry in *Washington, C. & A.*

*Turnpike v. Case, supra,* which we have already discussed. In *Vizzini v. Dopkin,* 176 Md. 639, 6 A. 2d 637, the unavoidable accident prayer offered did not define the term. The court referred to *Leland v. Empire Engineering Company, supra,* and held that the prayer should be refused. The ground upon which it was stated that the prayer should have been refused was that there was no evidence from which the jury could have found that the accident was unavoidable, although the discussion indicated that it should also have been refused because the form of the prayer was bad. In the latest case of *Fogel v. Phillips, supra,* decided June 17, 1948, after the instant case had been tried, we had before us an unavoidable accident prayer which did not define what the terms meant, and while we held that it was not appropriate to the facts of the case, we also said not only should this prayer have been refused because of lack of evidence upon which it could operate, but it should also have been refused because it was defective in form, and that a correct prayer of this character should define for the jury what is an unavoidable accident. It appears, therefore, that in all the cases in which the question has been raised, this Court has found that a prayer such as the twelfth prayer of the defendant, is improper in form because it tends to mislead the jury. Such a prayer should embody the definition laid down by Judge McSherry.

The fifth point raised by the appellants is that in answer to the court's question whether there had been a trial of the appellee on a manslaughter case, plaintiff's counsel said "no", and defendant's said "yes". But there is nothing in the record to show anything further about the trial, and under the circumstances we do not think there is anything before us in this connection.

For the reasons stated, the judgment will be reversed with costs, and the case remanded for a new trial.

> *Judgment reversed with costs and case remanded for a new trial.*