VICTOR LYNN LINES, INC. *v.* STATE, Use of
PURSEL et al.

[No. 113, October Term, 1951.]

Decided March 7, 1952.

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS and MARKELL, JJ.

*Theodore Sherbow,* with whom was *James J. Lindsay,* on the brief, for appellant.

*Paul Berman,* with whom were *Francis J. Valle, Sigmund Levin* and *Theodore B. Berman,* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

Here are appeals from judgments rendered the appellees as the result of a collision between the automobile owned and driven by John J. Pursel, Sr., who was killed thereby, and a tractor-trailer owned by the appellant and operated by David B. Brown. The tractor-trailer was passing the automobile at the time of the collision.

As appellant claims that John J. Pursel, Sr., was guilty of contributory negligence as a matter of law, we will recite the evidence in a light most favorable to the appellees.

Late on Easter Eve afternoon, April 8, 1950, John J. Pursel, Sr., aged 37, the operator of a trackless trolley bus, left Baltimore in his light green, 1941, Ford two-door sedan, accompanied by his wife, Gertrude M. Pursel, aged 40, and the following children: Margaret (Peggy) Ann, aged 13; James, aged 11; Eileen, aged 6; and Charles, aged 4 years, to visit relatives of Mrs. Pursel in Philadelphia. For the return trip to Baltimore, they left Philadelphia about 10:15 P.M. Easter Sunday night, Pursel operating the automobile with his wife sitting next to him holding the baby, Charles, on her lap and the others on the back seat. While proceeding south on Route 40, toward Baltimore, and about a mile north of Edgewood, a noise was heard which Mrs. Pursel thought was made by running over of an object in the road. The car slowed down and the husband drove on the shoulder of the road where the car stopped. There

was gasoline in the tank and Pursel was unable to locate the mechanical trouble. At that point in the road and at the point of collision there were two lanes for southbound traffic, each of concrete twelve feet wide, making a twenty-four foot concrete strip for southbound traffic. The shoulder to the right of the concrete was from seven to eight feet in width and sloped down to a gutter and apparently was macadam covered with loose gravel. A twenty-six foot grass plot separated the southbound concrete strip from the northbound lane.

The Pursels remained parked on the shoulder for about fifteen minutes. Mrs. Pursel then told her husband that they could not stay there all night because the children would catch cold. Traffic was heavy and as a number of vehicles passed, Mrs. Pursel saw from their lights a Sunoco filling station down the road. She told her husband that there was a garage down the road and possibly there would be someone there. Pursel got out and started pushing the car in the right or "slow" lane a short distance. When there was a grade he got back in the car and drifted. Then he started pushing again with his lights on. As he continued pushing the car down the road in the slow lane with the lights on, the right wheels were on the gravel as much as possible and the left wheels were on the concrete. He continued to push the car for about ten minutes, with the left door open and with one hand on the steering wheel and the other pushing. Traffic was heavy. The car stopped, the door of the car was slammed by Pursel and his body pressed against the window of the car. Mrs. Pursel looked back through the rear window and "saw lights coming through. I thought he was passing us." She then heard the crash. The skid marks of the left side of the tractor-trailer started in the right or slow lane and extended 123 feet to a culvert and stream where it pushed the Pursel automobile down in the culvert with its left or driver's side against the culvert facing in a southwesterly direction. The tractor-trailer was on its left side with the trailer against the automobile. No skid marks were

made by the Ford. Mr. Pursel was killed, and others in the automobile and the driver of the tractor-trailer injured. State Trooper Hershberger, who said he arrived at the scene about three minutes after the accident, testified that the right front bumper of the tractor-trailer struck the left rear of the Ford.

David Brown, the operator of the tractor-trailer, testified he had been operating tractor-trailers for about thirteen years and drove usually at night. He left Milford, Delaware, about 10:45 P.M. on Easter Sunday night, the weather being fair, with a load of cotton bales bound for Pier 4, Baltimore. His tractor-trailer, about 49 feet in length and 8 feet wide, was in perfect condition with regard to lights and brakes and had a governor on it which held the speed to from fifty to fifty-two miles an hour. About two or three-tenths of a mile before he reached the scene of the accident, traveling south, there was a slight down-grade, the road being straight. There were no cars ahead of him. The traffic was heavy. At that time there were cars following him which never got near enough to him to pass. As he started on this slight grade his lights were on "low beam", which would pick up traffic 200 to 225 feet ahead of him. He did not have his lights on "high beam", so as not to interfere with approaching traffic, although he admitted there was no approaching traffic. He was traveling south in the right lane, called the "slow lane". As he started down the slight grade there were cars some distance back of him, the lights from which he could see in his rear view mirrow. Traveling approximately forty-two miles an hour, he did not see the lights of any automobile ahead of him. There were no lights of an automobile on that road ahead of him before the accident. He said he saw some cars following. He came upon this object and "it seems like it loomed out of nowhere". He switched his "left arrow lights on". He then realized the object was stopped and he started to move over in the left hand fast lane. He realized then that it was too late to prevent hitting a car that was

trying to pass him at a high rate of speed on the left. He then straightened the tractor out and at that time he was too close to the car to prevent a crash, and that was when he "hit the brakes". He said he would have passed the Pursel car except that he saw in his left mirror an automobile trying to pass him on the left side. He said he changed the course of his tractor-trailer in order to avoid a collision with the machine trying to pass on his left and went directly on, "side-swiped" the man who was pushing the automobile. There was ample evidence in the case from which the jury could have found that all the lights were lighted on the Ford car. There is ample evidence also from which the jury could have found that the Ford automobile was not parked at the time of the collision but was being pushed along the highway in the right or slow lane. The appellant in its brief admits: "It is obvious that Pursel was not 'stopped' or 'parked' within the meaning of [Article 66½], Sec. 189 (a) but rather was 'disabled' as in Sec. 189 (b). The evidence is clear that he could not start his car, and was pushing it along the highway looking for help."

Appellant contends that Pursel's action in pushing his automobile on the traveled portion of a boulevard after removing it from a position of absolute safety on the shoulder was contributory negligence as a matter of law. With this contention we do not agree. Appellant relies on cases in which there were no lights on the automobile parked on the highway. *Miles v. Webb,* 162 Md. 269, 271, 159 A. 782; *Marshall v. Sellers,* 188 Md. 508, 53 A. 2d 5; and other cases. The answer to this argument is that the jury could clearly have found from the testimony that all the lights on the Pursel car were lighted and that it was not parked at the time of the collision, but was being pushed along in the right or slow lane of the dual highway. The appellant correctly cites the rule with respect to contributory negligence as a matter of law which follows and which is quoted from the case of *Beck v. Baltimore Transit Company,* 190

Md. 506, at page 511, 58 A. 2d 909, at page 911: "The rule with respect to contributory negligence is that the act relied on to establish, as a matter of law, the existence of contributory negligence must be distinct, prominent and decisive, and one about which ordinary minds would not differ in declaring it to be negligent. Where the nature and attributes of an act relied on to show negligence contributing to an injury sustained can only be determined correctly by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the court to determine its quality as a matter of law. *State v. Carroll-Howard Supply Co.*, 183 Md. 293 37 A. 2d 330; *Holler v. Lowery*, 175 Md. 149, 200 A. 353; *Merrifield v. C. Hoffberger Co.*, 147 Md. 134, 127 A. 500; *Taxicab Co. v. Emanuel*, 125 Md. 246, 93 A. 807." In this case, Pursel was where he had a legal right to be, in the right or "slow" lane. Article 66½, Section 162. *Holman v. Uglow*, 137 Oregon 358, 3 P. 2d 120. Pursel under the testimony here could not have been found guilty of contributory negligence as a matter of law.

The appellant next contends that the evidence in this case does not permit the application of the doctrine of last clear chance, and the lower court's improper inclusion of that doctrine in its charge constitutes an act so prejudicial to the appellant as to require a reversal and new trial. With this contention we do not agree. Here appellant relied on contributory negligence as a defense. Therefore, it was perfectly proper for the trial judge to instruct the jury as to the doctrine of last clear chance as it is a qualification of the rule which bars a recovery if the plaintiff has been contributorily negligent. As pointed out, the doctrine of last clear chance is well set out by Judge Offutt in the case of *Legum v. State*, 167 Md. 339, at page 355, 173 A. 565, 572, where it is said: "The basis of the doctrine of last clear chance is that the actor either has actual knowledge, or is under some legal duty which charges

him with knowledge, (a) that if he persists in a course which he is pursuing it will result in injury to another, (b) which the other cannot, because of ignorance or disability, be reasonably expected to avoid, (c) when the actor either has or is chargeable with that knowledge in time by the exercise of ordinary care to avoid injuring the plaintiff, but (d) fails to do so. *Bohlen, Studies in Law of Torts,* 293, note 5; 45 *C. J.* 984, 11 *C. J. et seq;* 20 *R. C. L.* 138 and *Suppl."* See also *Restatement of Torts,* Volume 2, Section 479. Here Brown, appellant's truck driver, admits that if he had driven the course he was following when he started to pass the Ford, he would have avoided collision with it, but he deliberately straightened out his tractor-trailer. He knew that if he did so and persisted in that course, he would hit Pursel and his Ford. There was no way that Pursel could have avoided the collision. Brown could have avoided the collision by continuing to pass the Ford, but he straightened out his tractor-trailer and persisted in that course knowing it would result in injury to others. Plainly, under appellant's own testimony, Brown had a last clear chance and ample opportunity to avoid this accident by continuing to pass the Ford.

Appellant contends that under the "Humanitarian Rule" he should be absolved of blame and cites the case of *Spoeneman v. Uhri,* 1933, 332 Mo. 821, 60 S. W. 2d 9. However, it was said in that case: "We do not mean to say that, if defendant's prior carelessness precipitates such an emergency, he will always be excused from liability merely because he could not thereafter avert the casualty without undue hazard to himself or others. He would be liable, if the plaintiff's petition is bottomed on that antecedent negligence." The jury in the instant case might have found that he was negligent in trying to overtake and pass this lighted automobile, slowly moving in the slow lane, at an unsafe distance. Code, Art. 66½, Section 164 (a). *Fogle v. Phillips,* 191 Md. 114, 119, 120, 60 A. 2d 198; *State v. Greaves,* 191 Md. 712, 719, 62 A. 2d 630. Compare *Reginia v. Dudley* and *Stephens,*

476

Appellant further contends that the court was in error in instructing the jury that Article 66½, Section 189, should be considered by them. This Section forbids parking on a paved highway when it is practical to park off the road. Appellant claims that this section being read to the jury permitted the finding that the Pursel vehicle had a right to be in the place where it was struck at the time of the accident. The answer to this contention is that under the evidence the jury could well have found that Pursel pushing his automobile did have a right to be where he was struck and that he was not parked on the highway. The driver of the tractor-trailer admitted that he "side-swiped" this man who was pushing the automobile.

The appellant further objects to the trial judge instructing the jury in reference to Code, Article 66½, Section 224, relating to the (Use of Multiple-Beam Road Lighting Equipment) ; Section 213 (When Lighted Lamps Are Required) ; and Section 226 (Alternate Road Lighting Equipment). The trial judge simply quoted all or parts of the above sections of the Motor Vehicle Law and then instructed the jury that if they found that appellant's driver violated these and the injuries were directly and proximately caused by such violations, without any negligence on the part of deceased directly contributing thereto, then the verdicts must be for the plaintiff.

The trial judge instructed the jury in part as follows: "* * * if you further find that the head lamps of the tractor-trailer, when dimmed, were not so aimed or of sufficient intensity to reveal a person, or another vehicle at a safe distance in advance of the tractor-trailer, then you are instructed that the tractor-trailer of the defendant was being operated in violation of the Motor Vehicle Laws * * *". Appellant excepts to the words "safe distance" without an explanation of what "safe distance" means. These words are taken directly from

Code, Art. 66½, Section 224 (a), *supra*, and are the words of the statute.

Exception is taken because the trial judge quoted the words of Code, Article 66½, Section 156, in reference to reckless driving. We see no reason why the jury could not have considered this portion of the Motor Vehicle Law.

The court instructed the jury that "one who operates a motor vehicle upon a public highway at night is bound to constantly observe the highway in front of him so as to discover persons and other vehicles thereon and avoid colliding with them, and to keep his motor vehicle under such control that he may readily operate or stop it to avoid such collision. The operator of a motor vehicle is bound to see what he could have seen if he had exercised due care under the circumstances, then existing, and if, in this case, you find that the operator of the motor tractor-trailer of the Defendant could, by the exercise of due care under all of the circumstances then and there existing, have seen the deceased and his automobile in time to have so operated the tractor-trailer as to have stopped it in time to have avoided the collision, and failed to do so, and if you further find that as a result of such failure the tractor-trailer collided with the deceased and his automobile, then under the law the Defendant would be considered negligent in so operating its tractor-trailer as to cause such collision." There was clearly, of course, enough evidence from which the jury could have found that all the lights on the automobile were lit.

The appellant excepts to this part of the instruction. As pointed out by the appellee in the case of *Dashiell v. Moore*, 177 Md. 657, at page 667, 11 A. 2d 640, 645, where an automobile collided with a mule astray on the highway at night, this Court, quoted the following from *Huddy* on *Automobiles*, sec. 371: " 'It may be stated as a general rule that the driver of an automobile is charged with notice of such conditions in and along the road as he should have seen. In other words, he is conclusively

presumed to have seen such surrounding circumstances as he would have seen had he properly exercised his faculty of vision. The duty to look implies the duty to see what is in plain sight unless some reasonable explanation is shown. Where there is nothing to obstruct the vision of a driver, it is negligence not to see what is clearly visible.' " *People's Drug Stores v. Windham,* 178 Md. 172, 185, 12 A. 2d 532. *Campbell & Sons v. United Railways,* 160 Md. 647, 652, 154 A. 552.

Appellant excepts to the failure to grant its third prayer as to acts in emergency. The granting of appellant's fourth prayer was really the granting of the instruction requested. As to the failure to grant defendant's fifth prayer in reference to rear lamps, the court in its instruction to the jury covered the statutory requirements as to rear lights. The court also instructed the jury fully as to contributory negligence as requested in its tenth and eleventh prayers. As there is no cross appeal by appellee, we are not passing on the validity of appellant's granted fourth, tenth, and eleventh prayers. Of course the trial judge is not required to grant any requested instruction if the matter is fairly covered by the instructions given the jury. Rules of Practice and Procedure, Trials—Rule 6, Instructions to the Jury. *Feinglos v. Weiner,* 181 Md. 38, 47, 28 A. 2d 577.

Finding no error, the judgments will be affirmed.

*Judgments affirmed, with costs.*