**Kathleen M. SCAGGS, Appellee,**

v.

**Fred George ZACHARIA, Appellant.**

No. 8644.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 9, 1962.

Decided Dec. 20, 1962.

William J. Evans and Frederick J. Green, Jr., Baltimore, Md., for appellant.

Joseph I. Pines, Baltimore, Md. (Israelson & Pines, Baltimore, Md., and Henry R. Berger, Washington, D. C., on brief), for appellee.

Before SOPER, BRYAN and J. SPENCER BELL, Circuit Judges.

SOPER, Circuit Judge.

On the evening of June 14, 1960 Kathleen M. Scaggs was struck from behind by a taxicab at a street intersection in Silver Spring, Maryland, just as she was stepping upon the end of a concrete island in the middle of a dual highway. Her case was tried before a jury and resulted in a verdict and judgment in her favor for injuries suffered in the sum of $3500. This appeal presents the single question whether the plaintiff was so clearly guilty of contributory negligence that the Judge should have granted the defendant's motion for a directed verdict in his favor and withdrawn the case from the jury. We think that the case was properly submitted to the jury.

At the site of the accident Georgia Avenue, running north and south, has three south bound lanes aggregating about 40 feet in width which are separated from the north bound lanes by a concrete island in the middle of the Avenue. Trinity Place, running east and west, intersects the Avenue at this point. Traffic on Trinity Place approaching from the west is required to stop before entering the Avenue, and a stop sign is placed near the street curb on the south side of Trinity Place close to the intersection. This traffic is permitted to make a right turn only at the Avenue, and, accordingly, a "right turn only" sign is placed in the center of Trinity Place.

No cross-walk was marked for persons crossing the Avenue at the time of the accident, but an extension eastwardly of the lines of the sidewalk on the south side of Trinity Place, as drawn on the plat by defendant's attorney, passes very close to the northern end of the island so that the more southerly of the two lines as extended appears to touch the north end of the island.

About 9:30 P.M. on the evening of the accident, Mrs. Scaggs and a woman companion, desiring to cross the Avenue from west to east, stepped down from the curb at the south-west corner of the Avenue and Trinity Place, and walked across the south bound lanes to the end of the island. Mrs. Scaggs was just stepping up with her left foot on to the end of the island when her right leg was struck by the front bumper of the taxi; she fell to the street and was injured.

Before stepping off the curb to cross the Avenue the plaintiff looked to her left

for south bound traffic and saw that the light on the next cross street to the north was red and that no south bound traffic was moving on the Avenue. She then looked to the left behind her, that is west on Trinity Place, and saw that a taxi was standing, and apparently parked, near the curb behind the stop sign with the driver and a passenger in the front seat. She then proceeded to cross the Avenue without looking again at the taxi, though she did look to her left a second time at the moment she commenced to cross. The testimony indicates that the two women walked across the Avenue at an ordinary pace and that the taxi started after they did and was going about five miles per hour just before the collision. Since the women had walked about 40 feet from their starting point when the plaintiff was hit, it is obvious that there was ample space in the street for the taxi to make a right hand turn without an accident.

The relevant Maryland statutes on which the defendant depends are those which define the relative rights of way of pedestrians and of vehicles traversing the streets of the towns and cities of the state. Article 66½, § 236(a) of the Code of Maryland of 1957 provides as follows:

"(a) In general.—All pedestrians shall have the right of way at street crossings in the towns and cities of this State, except where traffic is controlled at such crossings by traffic officers, or traffic-control devices. Between street crossings in such towns and cities, vehicles shall have the right of way."

Article 66½, § 2(a) (9) of the Code defines a cross walk or street crossing in the following terms:

"(9) Crosswalk. Any portion of a roadway distinctly indicated for pedestrian crossing by lines or other marking on the surface or that portion of a roadway ordinarily included within the prolongation or connection of the lateral lines of sidewalks at intersections."

These statutes make it plain that pedestrians have the right of way only at street crossings and that vehicles have the right of way only between street crossings. With these enactments in mind the defendant contends (1) that the plaintiff's own testimony shows that she was not in the crosswalk as she crossed the Avenue and, therefore, that she did not have the right of way; and (2) that her testimony also shows that she was guilty of contributory negligence as a matter of law under the Maryland authorities when, knowing that the taxicab was about to cross her path, she crossed the street without keeping the vehicle behind her constantly in sight.

■ The Court of Appeals of Maryland has held that a pedestrian may lawfully cross a street between intersections even though he does not have the right of way, but, if he attempts to do so, he must exercise a higher degree of care to avoid traffic than if he crossed at a street crossing, since the drivers of vehicles having the right of way, are entitled to assume that the pedestrian, if it is reasonably possible to do so, will yield the right of way to vehicles as required by statute. See Legum v. State, 167 Md. 339, 353, 173 A. 565. Indeed, the court has gone so far as to say that if the pedestrian crosses between intersections he must use "the greatest care" for his own protection. Henderson v. Brown, 214 Md. 463, 468, 135 A.2d 881.

In applying these well settled rules the Court of Appeals has held, under varying circumstances, that it is contributory negligence as a matter of law on the part of a pedestrian to leave a place of safety and to expose himself to the dangers of passing traffic in the bed of the highway between street intersections especially when he does not take sufficient pains to look and to assure himself that the way is clear before attempting to cross. Jendrzejewski v. Baker, 182 Md. 41, 46, 31 A.2d 611; Campbell v. Jenifer, 222 Md. 106, 111, 159 A.2d 353; Billmeyer v. State, 192 Md. 419, 426, 64 A.2d 755; Nance v. Kalkman,

223 Md. 564, 570, 165 A.2d 757; United States Fidelity and Guaranty Co. v. Royer, Md., 185 A.2d 341. On the other hand, it has been held that the act of crossing the street between intersections does not of itself constitute negligence in law and that the amount of diligence and care required of the pedestrian before venturing upon the highway varies with the circumstances. In Henderson v. Brown, 214 Md. 463, 468, 135 A.2d 881, 884, the court said:

"Maryland cases have adopted the language of Judge Cardozo in Knapp v. Barrett, 216 N.Y. 226, 230, 110 N.E. 428, 429, as to one who crosses the street: 'The law does not say how often he must look, or precisely how far, or when or from where. If, for example, he looks as he starts to cross, and the way seems clear, he is not bound as a matter of law to look again.' In Maryland the language, generally if not always, has been applied where the pedestrian was crossing at a crosswalk, it being said that having looked and seen no vehicle, or having seen a vehicle at a distance justifiably thought to be safe, the wayfarer was entitled to assume that an oncoming vehicle would respect his right-of-way. See, for example, Merrifield v. C. Hoffberger Co., 147 Md. 134, 127 A. 500; Taxicab Co. v. Otten-ritter, 151 Md. 525, 135 A. 587; Shaivitz v. Etmanski, 164 Md. 125, 164 A. 169; Legum v. State, for Use of Moran, 167 Md. 339, 173 A. 565; Sheriff Motor Co. v. State to Use of Parker, 169 Md. 79, 179 A. 508. The same rule might well apply, under some circumstances, when the pedestrian was crossing where he did not have the right-of-way. If, as he started to cross, he looked, and the view gave him credible assurance of adequate opportunity and ability to cross safely, he might not, as a matter of law, be said to be negligent in failing to look again, although common prudence would seem to say that it would be better to do so. * * *"

The question in the instant case is whether it must be held as a matter of law that the plaintiff was guilty of contributory negligence. The general rule on this subject is set forth at Meldrum v. Kellam Distr. Co., 211 Md. 504, 511, 128 A.2d 400, 403, in these words:

"* * *, we recognize and reaffirm what this court, on many occasions, has said is necessary to constitute contributory negligence as a matter of law. The rule is, the act relied upon to establish the existence of contributory negligence as a matter of law must be distinct, prominent and decisive, and one about which ordinary minds would not differ in declaring it to be negligent. Where the nature and attributes of an act relied upon to show negligence contributing to an injury sustained can only be determined correctly by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the court to determine its quality as a matter of law. State to Use of State Accident Fund v. Carroll-Howard Sup. Co., 183 Md. 293, 301, 37 A.2d 330; Victor Lynn Lines, Inc. v. State, 199 Md. 468, 474, 87 A.2d 165. * * *"

The defendant contends that he has satisfied this rule in that he has shown contributory negligence on the part of the plaintiff as a matter of law because she did not walk within the cross marks and because she did not continuously keep the taxicab in view during her progress across the Avenue. We have some difficulty in determining whether or not the plaintiff was within the lines of the crosswalk when she was hit. They were not marked on the surface of the street and their exact location would be difficult for an ordinary person to discern. Even if we accept the defendant's view, the plaintiff at the most was not more than two or three feet outside of

the lines. Unclear is the meaning of the phrase in the statutory definition that the crosswalk includes that portion of a roadway "ordinarily included within * * * [the] connection of the lateral lines of sidewalks at intersections." If the phrase is broad enough to permit a direct crossing from the western curb line of the Avenue to the end of the safety island, the route which a careful pedestrian would be likely to take, then Mrs. Scaggs was within the crosswalk, and she had the right of way.

But, even if this interpretation of the statute is not permissible, we are of the opinion that the question of contributory negligence was properly submitted to the jury. The plaintiff assured herself that the taxicab was standing still when she started to cross the Avenue, and it was reasonable for her to assume that she need not wait for the taxi to make the turn since, if the taxicab were to turn into the Avenue before she reached the safety island, there was ample space for her as well as the vehicle to use the area between the curb at the corner and the safety island. It is true that the burden is on the party who does not have the right of way to exercise the greatest care for his own safety; and, of course, the obvious negligence of the taxicab driver does not of itself demonstrate that the plaintiff was free from negligence; but, in determining whether the evidence shows that the plaintiff was negligent beyond any question or doubt, it is necessary to take into consideration that a careful person would naturally assume that the driver of the vehicle would make safe use of the wide space which the breadth of the south bound lanes afforded. The situation was very different from those considered in some of the cases cited herein where the pedestrian attempted to cross a street between intersections knowing full well that he would cross the path of passing traffic. To say the least, these circumstances presented a problem for the jury to decide.

Affirmed.